| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>**FOX ROTHSCHILD LLP**<br>49 Market St.<br>Morristown, NJ 07960<br>Mark E. Hall, Esq.<br>Martha B. Chovanes, Esq.<br>Michael R. Herz, Esq.<br>mhall@foxrothschild.com<br>mchovanes@foxrothschild.com<br>mherz@foxrothschild.com<br>Telephone: (973) 992-4800<br>Facsimile: (973) 992-9125<br><br>*Counsel for L'Occitane, Inc.*<br><br>**COLE SCHOTZ P.C.**<br>Court Plaza North<br>25 Main Street<br>Hackensack, New Jersey 07601<br>Warren A. Usatine, Esq.<br>Seth Van Aalten, Esq. (admitted *pro hac vice*)<br>Justin R. Alberto, Esq. (admitted *pro hac vice*)<br>wusatine@coleschotz.com<br>svanaalten@coleschotz.com<br>jalberto@coleschotz.com<br>Telephone: (201) 489-3000<br>Facsimile: (201) 489-1536<br><br>*Counsel for the Official Committee of Unsecured Creditors* |

| In Re:<br><br>L'OCCITANE, INC.,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 21-10632-MBK<br><br>Judge:  Michael B. Kaplan, Chief Judge |
|---|---|

## NOTICE OF FILING OF SECOND AMENDED PLAN

**PLEASE TAKE NOTICE** that on July 15, 2021, L'Occitane, Inc., the debtor and debtor-in-possession (the "Debtor"), and the Official Committee of Unsecured Creditors of L'Occitane, Inc. (the "Creditors' Committee" and with the Debtor, the "Plan Proponents") filed the *First Amended Joint Plan of Reorganization of L'Occitane, Inc. and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, revised or modified, including all exhibits thereto, the "First Amended Plan") [Docket No. 410].

125532939.1

**PLEASE TAKE FURTHER NOTICE** that the Plan Proponents hereby file a revised version of the First Amended Plan (the "Second Amended Plan"). The Second Amended Plan is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that a blackline of the Second Amended Plan relative to the First Amended Plan is attached hereto as **Exhibit B**, which blackline reflects all revisions to the First Amended Plan since its filing on July 15, 2021.

Dated: August 20, 2021

**FOX ROTHSCHILD LLP**

*/s/ Mark E. Hall*
Mark E. Hall
Martha B. Chovanes
Michael R. Herz

*Counsel to the Debtor and Debtor in Possession*

-and-

**COLE SCHOTZ P.C.**

Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Justin R. Alberto, Esq. (admitted *pro hac vice*)

*Counsel for the Official Committee of Unsecured Creditors*

2

125532939.1

# **EXHIBIT A**

**Second Amended Plan**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**FOX ROTHSCHILD LLP**
49 Market St.
Morristown, NJ 07960
Mark E. Hall, Esq.
Martha B. Chovanes, Esq.
Michael R. Herz, Esq.
mhall@foxrothschild.com
mchovanes@foxrothschild.com
mherz@foxrothschild.com
Telephone:  (973) 992-4800
Facsimile:   (973) 992-9125
*Counsel for L'Occitane, Inc.*

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Justin R. Alberto, Esq. (admitted *pro hac vice*)
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536

*Counsel for the Official Committee of Unsecured Creditors*

| In Re: | |
|---|---|
| L'OCCITANE, INC., | Chapter 11 |
| Debtor. | Case No. 21-10632 (MBK) |
| | Judge:  Michael B. Kaplan, Chief Judge |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION OF L'OCCITANE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT, YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN, OR THE TERMS OF THIS PLAN FOR ANY PURPOSE.**

Dated: August 20, 2021          **FOX ROTHSCHILD LLP**

Attorneys for Debtor and Debtor in Possession

-and-

**COLE SCHOTZ P.C.**

Counsel for the Official Committee of Unsecured Creditors

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................. 1

ARTICLE I - DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
         OF TIME AND GOVERNING LAW ........................................................... 1
    A.      DEFINED TERMS. ......................................................................................... 1
    B.      RULES OF INTERPRETATION AND COMPUTATION OF TIME. ............... 10
    C.      GOVERNING LAW. ....................................................................................... 11
    D.      REFERENCE TO MONETARY FIGURES. ....................................................... 11

ARTICLE II - ADMINISTRATIVE CLAIMS, AND PRIORITY TAX CLAIMS .................... 11
    A.      ADMINISTRATIVE CLAIMS. ....................................................................... 12
    B.      PRIORITY TAX CLAIMS. .............................................................................. 13
    C.      STATUTORY FEES. ...................................................................................... 14

ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS AND
         INTERESTS .................................................................................................. 14
    A.      CLASSIFICATION OF CLAIMS AND INTERESTS. ....................................... 14
    B.      SUMMARY OF CLASSIFICATION. ............................................................... 14
    C.      TREATMENT OF CLAIMS AND INTERESTS. ............................................... 15
    D.      SPECIAL PROVISION GOVERNING CLAIMS THAT ARE NOT
         IMPAIRED. ................................................................................................... 18
    E.      CONFIRMATION PURSUANT TO SECTIONS 1129(A)(10) AND
         1129(B) OF THE BANKRUPTCY CODE. ...................................................... 18
    F.      ELIMINATION OF VACANT CLASSES. ....................................................... 18
    G.      CONTROVERSY CONCERNING IMPAIRMENT. .......................................... 18
    H.      ACCEPTANCE OR REJECTION OF THE PLAN. ........................................... 19

ARTICLE IV - MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 19
    A.      VESTING OF ASSETS. .................................................................................. 19
    B.      SOURCES OF CONSIDERATION FOR PLAN DISTRIBUTIONS. .................. 19
    C.      EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS. ................... 19
    D.      EXEMPTION FROM CERTAIN TAXES AND FEES. ...................................... 20
    E.      TREATMENT OF CAUSES OF ACTION. ....................................................... 20
    F.      ABILITY TO SEEK AND OBTAIN DISCOVERY. .......................................... 20
    G.      DEBTOR'S EXISTENCE. ............................................................................... 20
    H.      DISSOLUTION OF CREDITORS' COMMITTEE. ........................................... 21
    I.      CORPORATE AUTHORITY. ......................................................................... 21

ARTICLE V - FUNDING AND DISBURSEMENTS ............................................................. 21
    A.      DISTRIBUTION AGENT. .............................................................................. 21
    B.      CASH PAYMENTS. ....................................................................................... 21
    C.      DISTRIBUTION FOR ALLOWED CLAIMS. ................................................. 21
    D.      OBJECTIONS TO CLAIMS ........................................................................... 22

| | | |
|---|---|---|
| E. | INTEREST AND CHARGES. | 22 |
| F. | COMPLIANCE WITH TAX REQUIREMENTS. | 22 |
| G. | FRACTIONAL DOLLARS: DE MINIMIS DISTRIBUTIONS. | 23 |
| H. | DELIVERY OF DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS. | 23 |
| I. | UNCLAIMED DISTRIBUTIONS. | 23 |
| J. | NO PENALTY CLAIMS. | 24 |
| K. | SETOFFS AND RECOUPMENT. | 24 |
| L. | CLAIMS PAID OR PAYABLE BY THIRD PARTIES. | 24 |

ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 25

| | | |
|---|---|---|
| A. | ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. | 25 |
| B. | CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES. | 26 |
| C. | CLAIMS BASED ON ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. | 26 |
| D. | GUARANTY FOR CURE DISPUTES. | 27 |
| E. | MODIFICATIONS, AMENDMENTS, SUPPLEMENTS, RESTATEMENTS OR OTHER AGREEMENTS. | 27 |
| F. | PAYMENTS RELATED TO ASSUMPTION OF CONTRACTS AND LEASES. | 27 |

ARTICLE VII - SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ........ 27

| | | |
|---|---|---|
| A. | SETTLEMENT, COMPROMISE, AND RELEASE OF CLAIMS AND INTERESTS. | 27 |
| B. | LIABILITIES TO, AND RIGHTS OF, GOVERNMENTAL UNITS. | 28 |
| C. | EXCULPATION. | 28 |
| D. | RELEASE. | 28 |
| E. | INJUNCTION. | 30 |
| F. | TERM OF INJUNCTIONS OR STAYS. | 30 |

ARTICLE VIII - CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ....... 30

| | | |
|---|---|---|
| A. | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. | 30 |
| B. | WAIVER OF CONDITIONS. | 31 |
| C. | EFFECT OF FAILURE OF CONDITIONS. | 31 |

ARTICLE IX - MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ........ 31

| | | |
|---|---|---|
| A. | MODIFICATION, AMENDMENTS OR REVOCATION. | 31 |
| B. | EFFECT OF CONFIRMATION ON MODIFICATIONS. | 32 |

ARTICLE X - RETENTION OF JURISDICTION ........ 32

2

ARTICLE XI - MISCELLANEOUS PROVISIONS ................................................................... 32
    A.     IMMEDIATE BINDING EFFECT. ................................................................ 32
    B.     ADDITIONAL DOCUMENTS. ..................................................................... 33
    C.     RESERVATION OF RIGHTS. ....................................................................... 33
    D.     SUCCESSORS AND ASSIGNS. .................................................................... 33
    E.     NOTICES. .................................................................................................... 33
    F.     ENTIRE AGREEMENT ................................................................................ 34
    G.     EXHIBITS. .................................................................................................. 34
    H.     SEVERABILITY OF PLAN PROVISIONS. .................................................. 34
    I.     EXEMPTIONS FROM CERTAIN TRANSFER TAXES. ................................ 35
    J.     CLOSING OF CHAPTER 11 CASE. .............................................................. 35
    K.     NO ADMISSION AGAINST INTEREST. ...................................................... 35
    L.     NO WAIVER. .............................................................................................. 35
    M.     HEADINGS. ................................................................................................ 36
    N.     CONFLICTS. ............................................................................................... 36

## **INTRODUCTION**

L'Occitane, Inc., as debtor and debtor in possession, in the above-captioned Chapter 11 Case ("<u>Debtor</u>") and the Official Committee of Unsecured Creditors of L'Occitane, Inc. (the "<u>Creditors' Committee</u>" and with the Debtor, the "<u>Plan Proponents</u>") jointly propose this second amended chapter 11 plan (as may be amended from time to time, the "<u>Plan</u>"). Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, and assets, as well as a summary and description of this Plan and certain related matters. The Debtor and the Creditors' Committee are the proponents of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## **ARTICLE I**
## **DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW**

A.    Defined Terms.

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "***Administrative Claim***" means any Claim against the Debtor or its Estate for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date in connection with preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises), including Professional Fee Claims (defined below) and (b) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of the Judicial Code.

2.    "***Administrative Claim Bar Date***" means the date that is thirty (30) days after the Notice of Effective Date is Filed.

3.    "***Affiliate***" means, with respect to any specified Entity, any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such specified Entity. For purposes of this definition, "control" (and any similar term) means the power of one or more Entities to direct, or cause the direction of, the affairs of another Entity by reason of ownership of voting stock or by contract or otherwise.

4.    "***Allowed***" means, with respect to a Claim against or Interest in the Debtor, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or a request for a payment of an Administrative Claim, as applicable, that is Filed on or before the Administrative Claims Bar Date, the General Bar Date, the Governmental Claim Bar Date, or the Rejection Claim Bar Date (or for which Claim under the Plan, Bankruptcy Code, or pursuant to a Final Order, a Proof of Claim or request for payment of Administrative Claim is not required to be Filed), as applicable; (b) a Claim that is listed in Debtor's Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest allowed pursuant to the Plan or Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in (a) and (b) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such

Claim, no objection to the allowance thereof is Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is Filed and the Claim has been allowed by a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed is not considered Allowed and any person or entity holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.  Except as otherwise specified in the Plan, Final Order, or as otherwise agreed by the Debtor, the amount of an Allowed Claim shall not include interest or fees on such Claim accruing from and after the Petition Date.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been Filed, is not considered Allowed and shall be expunged without further action by the Debtor or the Reorganized Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

5.      "*Assets*" means any and all of the right, title and interest of the Debtor in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Debtor, as the case may be, including, without limitation, the Debtor's Estate.

6.      "***Assumed Executory Contracts and Unexpired Leases***" means the executory contracts and unexpired leases assumed either through a notice of assumption pursuant to the Procedures Order (defined below) or pursuant to the Plan or Plan Supplement.

7.      "*Avoidance Actions*" means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

8.      "*Bankruptcy Code*" means title 11 of the United States Code.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of any withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of New Jersey.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

11.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

12.  "*Cash*" means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

13.  "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any state law fraudulent transfer claim; and subject, however, to any releases provided in this Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court. For the avoidance of doubt, the Causes of Action shall not include any Causes of Action against the Released Parties.

14.  "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code administered under case number 21-10632 (MBK).

15.  "*Claim*" means any claim against the Estate, as such term is defined in section 101(5) of the Bankruptcy Code.

16.  "*Class*" means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtor as set forth in Article III hereof.

17.  "*Cole Schotz*" means Cole Schotz P.C., counsel for the Official Committee of Unsecured Creditors of L'Occitane, Inc.

18.  "*Collateral*" means any property or interest in property in the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

19.  "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

20.  "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

21.  "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

22.  "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

3

23.    "*Consummation*" means the occurrence of the Effective Date.

24.    "*Contingent Claim*" means any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

25.    "*Creditor*" has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

26.    "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee [See Docket No. 110]

27.    "*Cure Amount*" means the payment of Cash or the distribution of other property (as the Debtor or Reorganized Debtor, as applicable, and the counterparty to an executory contract or unexpired lease of the Debtor may agree or the Bankruptcy Court may order) necessary to (a) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease and (b) permit the Debtor to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

28.    "*Cure Dispute*" means any amount in dispute as between the Debtor or Reorganized Debtor, as applicable, and a counterparty to an Executory Contract or Unexpired Lease that has not been resolved prior to Confirmation.

29.    "*Cure Dispute Guaranty*" means the guaranty provided by L'Occitane International to Debtor to pay any Cure Amount subject to a Cure Dispute in the event that such Cure Dispute is determined in favor of the counterparty to an Executory Contract or Unexpired lease that is assumed.

30.    "*Debtor*" means L'Occitane, Inc., the debtor and debtor in possession in the Chapter 11 Case.

31.    "*Disclosure Statement*" means the First Amended Disclosure Statement for the Plan of Reorganization of L'Occitane, Inc., pursuant to Chapter 11 of the Bankruptcy Code, dated July 15, 2021, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

32.    "*Disputed*" means, any Claim against or Interest in the Debtor that is (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Debtor in any litigation or contested matter and as to which no Final Order resolving such litigation or contested matter has been entered. A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

33.    "*Disputed Claim Guaranty*" means the guaranty provided by L'Occitane International to Debtor to pay any Disputed Claims in the event that such Disputed Claim is determined in favor of the Holder of the Disputed Claim.

34.    "*Distribution Agent*" means, from the Effective Date, Stretto, who shall make and facilitate distributions required by this Plan.

35.    "*Distribution Date*" means, with respect to (a) any Claim that is Allowed as of the Effective Date, a date that is not more than thirty (30) days after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date not more than thirty (30) after the date on which such Claim becomes Allowed.

36.    "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtor, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or within thirty (30) days of the Effective Date.

37.    "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

38.    "*Estate*" means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

39.    "*Exculpated Claim*" means any Cause of Action, arising during the period commencing on the Petition Date through the closing of the Chapter 11 Case, related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Case; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Case, the Disclosure Statement, the Plan, and/or the Plan Supplement, if any; (c) the formulation, preparation, or negotiation of any documents with respect to, or the consummation of, any sale of the Debtor's assets during the Chapter 11 Case, if any; (d) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the foregoing subsections (a), (b), or (c); (e) the pursuit of Consummation; and/or (f) the filing, administration, and/or implementation of the Chapter 11 Case, the Plan, or the distribution of property in connection therewith or thereunder.

40.    "*Exculpated Party*" means each of: (a) the Debtor; (b) L'Occitane International (except for the guarantees provided by L'Occitane International prepetition, the Cure Dispute Guaranty(ies), and the Disputed Claim Guaranty(ies), which shall not be exculpated); (c) the Creditors' Committee; (d) the members and former member(s) of the Creditors' Committee solely in their capacities as such or, with respect to former member(s) of the Creditors' Committee, in their capacity as such prior to resigning from the Creditors' Committee; and (e) with respect to each of the foregoing Entities, such Entity's current officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors, and assigns, but only to the extent that such party served in such a capacity during the Chapter 11 Case.

5

41.    "***Executory Contract***" means a contract to which a Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

42.    "***Exit Loan Facility***" shall mean an unsecured loan provided by L'Occitane International. The Exit Loan Facility shall provide adequate working capital in an amount agreed upon by the Debtor and L'Occitane International that is sufficient to make payments of all Allowed Claims under the Plan.

43.    "***Exit Loan Facility Documents***" shall mean the agreement(s) governing the Exit Loan Facility and related notes, guarantees or other similar documents, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time.

44.    "***File***" or "***Filed***" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

45.    "***Final Distribution***" means the distribution under this Plan which, (a) after giving effect to such distribution, results in full payment under this Plan or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

46.    "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek certiorari has expired and no request for reconsideration or relief from judgment, appeal, or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

47.    "***Fox Rothschild***" shall mean Fox Rothschild LLP, counsel to the Debtor and Debtor in Possession in the Chapter 11 Case.

48.    "***General Bar Date***" means May 7, 2021.

49.    "***General Unsecured Claim***" means any Claim against a Debtor that is (i) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, a Subordinated Claim, or an Interest.  For the avoidance of doubt, General Unsecured Claims include Rejection Claims.

50.    "***Governmental Claim***" means any Claim against any Debtor Filed by a Governmental Unit.

51.    "***Governmental Claim Bar Date***" means July 26, 2021.

6

52.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

53.     "*Holder*" means an Entity holding a Claim against or an Interest (defined below) in the Debtor.

54.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55.     "*Interests*" means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferrable and whether fully vested or vesting in the future, including any option, warrant, or other right, contractual or otherwise, to acquire such interest in the Debtor, that existed immediately before the Effective Date and all rights arising with respect thereto.

56.     "*Interim Compensation Order*" means the *Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 235].

57.     "*Intercompany Claim*" means any Claim against a Debtor held by L'Occitane International or an affiliate of the Debtor.

58.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

59.     "*Lien*" has the same meaning as set forth in section 101(37) of the Bankruptcy Code.

60.     "*Local Rules*" means the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

61.     "*L'Occitane International*" means L'Occitane International, S.A.

62.     "*Notice*, *Claims and Balloting Agent*" means Stretto.

63.     "*Notice of Effective Date*" means a notice to be Filed with the Bankruptcy Court by the Debtor upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan.

64.     "*Ordinary Course Professional Order*" means the Order Pursuant to 11 U.S.C. §§ 105(a), 327, 330, and 503(b) Authorizing Debtor to Employ and Compensate Professionals Used in the Ordinary Course of Business [Docket No. 204].

7

65.     "**Other Priority Claims**" means any Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, Professional Fee Claim, or a Priority Tax Claim.

66.     "**Other Secured Claims**" means any Secured Claim that is not a Secured Tax Claim.

67.     "**Person**" means a person as such term is defined in section 101(41) of the Bankruptcy Code.

68.     "**Petition Date**" means January 26, 2021, the date on which the Debtor commenced the Chapter 11 Case.

69.     "**Plan**" means this Plan of Reorganization of L'Occitane, Inc., including all appendices, exhibits, schedules and supplements hereto, pursuant to Chapter 11 of the Bankruptcy Code, as modified, amended or supplemented from time to time.

70.     "**Plan Proponents**" means the Debtor and the Creditors' Committee, jointly.

71.     "**Plan Supplement**" means a supplement or supplements to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to implementation of the Plan, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules, to be filed by the Debtor twenty-one (21) days before the Confirmation Hearing on notice to all Creditors and parties-in-interest, and which includes the following, as applicable: (a) the Exit Loan Facility Documents; (b) a list of the Executory Contracts and Unexpired Leases the Debtor intends to assume pursuant to Article VI of the Plan along with the proposed Cure Amounts; and (c) a list of the Executory Contracts and Unexpired Leases the Debtor intends to reject under Article VI the Plan..

72.     "**Priority Tax Claim**" means any Claim against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

73.     "**Procedures Order**" means the *Order Authorizing and Approving Procedures for Rejection and Assumption of Executory Contracts and Unexpired Leases* entered by the Court on January 28, 2021 [Docket No. 50].

74.     "**Professional**" means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after application or motion on notice under that section of the Bankruptcy Code.

75.     "**Professional Fee Claim**" means a Claim for any accrued but unpaid fees and expenses owed to a Professional on or after the Petition Date pursuant to such Professional's

8

engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code; provided that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional. To the extent that there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered a Professional Fee Claim.

76. *"Professional Fee Claim Estimate"* means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Article II of the Plan.

77. "*Professional Fee Claim Reserve*" means the reserve established by the Debtor and maintained by the Debtor or Reorganized Debtor pursuant to the terms of this Plan and the Confirmation Order to be distributed to Holders of Allowed Professional Fee Claims.

78. "*Proof of Claim*" means a written proof of Claim that is Filed against the Debtor in the Chapter 11 Case.

79. "*Proof of Interest*" means a written proof of Interest that is Filed against the Debtor in the Chapter 11 Case.

80. *"Rejected Executory Contract or Unexpired Lease"* means any executory contract or unexpired lease rejected either through a notice of rejection pursuant to the Procedures Order or pursuant to a Plan Supplement.

81. "*Rejection Claim*" means a Claim against the Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

82. "*Rejection Claim Bar Date*" means the later of (a) the General Bar Date or (b) 5:00 p.m. ET on the day that is thirty (30) days after the Order rejecting the Executory Contract or Unexpired Lease is entered on the docket, or (c) such other date as established pursuant to Bankruptcy Court Order.

83. "*Released Party*" means (a) the Debtor; (b) the Creditors' Committee; (c) the members of the Creditors' Committee solely in their capacities as members of the Committee, and (d) L'Occitane International, (except for the guarantees provided by L'Occitane International prepetition, the Cure Dispute Guaranty(ies), and the Disputed Claim Guaranty(ies), which shall not be released), and each such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacity as such.

84. *"Releasing Party"* means the Holder of a Claim or Interest.

85. *"Reorganized Debtor"* means post-Effective Date L'Occitane, Inc.

9

86. "*Retained Causes of Action*" means any Cause of Action other than Avoidance Actions and any other Cause of Action that is expressly subject to the release and exculpation provisions of this Plan.

87. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

88. "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or (b) of the Bankruptcy Code Allowed as such pursuant to the Plan.

89. "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

90. "*Tax Code*" means the Internal Revenue Code of 1986, as amended.

91. "*Taxing Authority*" means all federal and state taxing agencies.

92. "*Third-Party Release*" shall have the meaning ascribed to it in Section VII.D.2 of the Plan.

93. "*Unclaimed Property*" means any distribution to any Creditor under this Plan that is unclaimed sixty (60) days following the date of such distribution under this Plan.

94. "*Unclaimed Property Reserve*" means any Unclaimed Property reserved for a period of sixty (60) days by the Distribution Agent on behalf of Holders of Unclaimed Property.

95. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

96. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

97. "*U.S. Trustee*" means the United States Trustee for Region 3.

B.    *Rules of Interpretation and Computation of Time.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

10

(2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

C.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

11

A.    *Administrative Claims.*

1.    Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment with respect to such Administrative Claim, each Holder of an Allowed Administrative Claim will be paid in full in Cash on the earlier of the date that is (a) as soon as practicable after the date such Allowed Administrative Claim becomes due in the ordinary course of business in accordance with the terms and conditions of the particular transaction, contract, or other agreement giving rise to such Allowed Administrative Claim, (b) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (c) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

Any claimants asserting an Administrative Claim must file its claim with the Bankruptcy Court on or before the Administrative Claim Bar Date, which is thirty (30) days after the Notice of Effective Date is Filed; however, counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to Article VI of the Plan need not file an Administrative Claim for any Cure Amounts listed in the Plan Supplement as due under such Executory Contracts and Unexpired Lease or for any amount subject to a Cure Dispute.

2.    Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date (with parties-in-interest having twenty-one (21) days to file objections, if any, to such applications); *provided, however* that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim.

3.    Professional Fee Claim Reserve

On the Effective Date, the Reorganized Debtor shall establish and fund the Professional Fee Claim Reserve with Cash equal to 110% of the Professional Fee Estimate that has not already been filed with the Bankruptcy Court.  The Professional Fee Claim Reserve shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estate of the Debtor or the Reorganized Debtor.  No Liens, Claims, or Interests shall encumber the Professional Fee Claim Reserve in any way.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Professional Fee Claim Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed but not more than thirty (30) days after allowance.  When all such Allowed amounts owing to Professionals have been paid

12

in full, any remaining amount in the Professional Fee Claim Reserve shall promptly be released to the Reorganized Debtor without any further action or order of the Court.

### 4. Professional Fee Claims Estimate

Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtor or the Creditors' Committee through the Effective Date and shall deliver such good faith estimate to the Debtor no later than five (5) business days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtor or Reorganized Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

### 5. Post Effective Date Fees and Expenses.

Except as otherwise provided in the Plan, on and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall, in the ordinary course of business without any further notice or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by Professionals retained by the Debtor, the Reorganized Debtor, or the Creditors' Committee (which shall be limited to the fees and expenses incurred in connection with the preparation, filing, and prosecution of the Creditors' Committee's Professionals' fee applications), as applicable. Upon the Effective Date, the requirement that Professionals comply with sections 327 through 331, 363 and 1103 of the Bankruptcy Code after such date shall terminate, and the Debtor or Reorganized Debtor, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtor, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtor in the ordinary course of business.

### B. *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive, at the option of the Reorganized Debtor, one of the following treatments: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (b) such other treatment as may be agreed upon by such Holder and the Reorganized Debtor or otherwise determined by order of the Bankruptcy Court. Allowed Priority Tax Claims will be paid on or as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such

Priority Tax Claim against the Debtor becomes an Allowed Priority Tax Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

      C.    *Statutory Fees.*

      All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtor on the Effective Date. On and after the Effective Date, the Reorganized Debtor shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) payment of all Quarterly Fees (as defined below) for the Chapter 11 Case until the entry of a final decree or until such Chapter 11 Case is closed or dismissed.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

      A.    *Classification of Claims and Interests.*

      Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. All Claims and Interests, except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

      The classification of Claims against and Interests in the Debtors pursuant to the Plan is as set forth below.

      B.    *Summary of Classification.*

      The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Creditors | Unimpaired | Deemed to Accept |
| 5 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Interests | Unimpaired | Deemed to Accept |

C.    *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtor, the treatment provided for the Holders of such Allowed Claims or Allowed Interests within each class is specified below:

1.    <u>Class 1 – Secured Tax Claims</u>

i.    *Classification*:  Class 1 consists of all Secured Tax Claims.

*Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, and to the extent such Secured Tax Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Secured Tax Claim, each Holder thereof shall receive, at the option of the Reorganized Debtor: (i) payment in full in Cash of the due and unpaid portion of its Secured Tax Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) as soon as practicable after the date such Allowed Secured Tax Claim becomes due and payable; (ii) the collateral securing its Allowed Secured Tax Claim; (iii) Reinstatement of its Allowed Secured Tax Claim; or (iv) such other treatment rendering its Allowed Secured Tax Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

ii.    *Voting*:  Class 1 is Unimpaired by the Plan, and each Holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Secured Claims</u>

i.    *Classification*:  Class 2 consists of all Other Secured Claims.

ii.    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, and to the extent such Other Secured Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the Debtor: (i) payment in full in Cash of the due and unpaid portion of its Other Secured Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) as soon as practicable after the date such Allowed Other Secured Claim

15

becomes due and payable; (ii) the collateral securing its Allowed Other Secured Claim; (iii) reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

iii.   *Voting*:  Class 2 is Unimpaired by the Plan, and each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.   <u>Class 3 – Other Priority Claims</u>

i.   *Classification*: Class 3 consists of all Other Priority Claims.

ii.   *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, and to the extent such Other Priority Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive (a) Cash in an amount equal to the due and unpaid portion of such Allowed Other Priority Claim on the later of (i) the Effective Date (or as soon thereafter as reasonably practicable) or (ii) as soon as practicable after the date such Allowed Other Priority Claim becomes due in the ordinary course of business in accordance with the terms and conditions of the particular transaction, contract, or other agreement giving rise to such Allowed Other Priority Claim; (b) such other treatment to render such Other Priority Claim Unimpaired under section 1124 of the Bankruptcy Code; or (c) such other treatment as such Holder may agree to or otherwise permitted by section 1129(a)(9) of the Bankruptcy Code.

iii.   *Voting*:  Class 3 is Unimpaired by the Plan, and each Holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.   <u>Class 4 – General Unsecured Claims</u>

i.   *Classification*:  Class 4 consists of all General Unsecured Claims

ii.   *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, and to the

16

extent such General Unsecured Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed General Unsecured Claim, each Holder thereof shall receive (a) Cash in an amount equal to the due and unpaid portion of such Allowed General Unsecured Claim on the later of (i) the Effective Date  or (ii) the first business day after the date that is thirty (30) calendar days after the date such  General Unsecured Claim becomes an Allowed General Unsecured Claim; (b) such other treatment as such Holder may agree to.

iii.　*Voting*:  Class 4 is Unimpaired by the Plan, and each Holder of a Class 4 General Unsecured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5.　Class 5 – Intercompany Claims

i.　*Classification*:  Class 5 consists of all Intercompany Claims.

ii.　*Treatment*:  Except to the extent that a Holder of an Allowed Intercompany Claim agrees to less favorable treatment, and to the extent such Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Intercompany Claim, each Holder thereof shall receive (a) Cash in an amount equal to the due and unpaid portion of such Allowed Intercompany Claim on the later of (i) the Effective Date (or as soon thereafter as reasonably practicable) or (ii) as soon as practicable after the date such Claim becomes an Allowed Intercompany Claim; (b) such other treatment to render such Allowed Intercompany Claim Unimpaired under section 1124 of the Bankruptcy Code; or (c) such other treatment as such Holder may agree to or otherwise permitted by section 1129(a)(9) of the Bankruptcy Code.  With respect to the Allowed Intercompany Claim of International in the amount of approximately $20 million, on the Effective Date, such loan claim shall become part of the unsecured Exit Loan Facility.

iii.　*Voting*:  Class 5 is Unimpaired by the Plan, and each Holder of a Class 5 Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

17

6.     <u>Class 6—Interests</u>

i.     *Classification*:  Class 6 consists of all Interests of L'Occitane Inc., which are 100% held by L'Occitane International, S.A.

ii.     *Treatment*:  On the Effective Date, Interests in the Debtor will be retained and held by the current Interest Holders.

iii.     *Voting*:  Class 6 is Unimpaired by the Plan, and each Holder of a Class 6 Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 6 Interests are not entitled to vote to accept or reject the Plan.

D.     *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights in respect of any Claims or Interests that are not Impaired, including all rights of Debtor in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

E.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) is satisfied for purposes of Confirmation because there are no Classes that are Impaired under the Plan. The Debtor reserves the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129 of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.     *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan.

G.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.    *Acceptance or Rejection of the Plan.*

1.    Voting Classes

No Classes are Impaired and accordingly, no Classes are entitled to vote on the Plan.

2.    Presumed Acceptance of the Plan

Pursuant the Bankruptcy Code, Classes 1, 2, 3, 4, 5, and 6 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.    Presumed Rejection of the Plan

No Classes are deemed to have rejected the Plan.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all the Debtor's Assets shall immediately vest in the Reorganized Debtor.

B.    *Sources of Consideration for Plan Distributions.*

Distributions under the Plan will be funded by the Reorganized Debtor's Cash on hand on the Effective Date and an Exit Loan Facility provided by L'Occitane International. On or before the Effective Date, the Debtor shall fund the Professional Fee Claim Reserve, and shall provide sufficient cash funds from the Exit Loan Facility to the Distribution Agent to provide for payment of Allowed Claims under the Plan.

C.    *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtor and its directors, members, trustees, officers, and managers are and, after the Effective Date, the Reorganized Debtor and its directors, members, trustees, officers, and managers are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

19

D.      *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

E.      *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan or pursuant to a Bankruptcy Court order, the Debtor reserves and assigns to the Reorganized Debtor, any and all Retained Causes of Action, whether arising before or after the Petition Date, and preserves the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Retained Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, if any, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Reorganized Debtor will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

F.      *Ability to Seek and Obtain Discovery.*

From and after the Effective Date, the Reorganized Debtor shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

G.      *Debtor's Existence.*

From and after the Effective Date, the Debtor shall continue in existence as a separate legal entity, with all the powers of a corporation pursuant to the applicable law in its state of incorporation for all purposes.  After the Effective Date the Reorganized Debtor shall exist pursuant to the same organizational documents that were in effect prior to the Debtor's Petition Date. Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Reorganized Debtor without any requirement of further action by any Debtor. On and after the Effective Date, the Debtor's remaining assets and affairs shall be administered and managed by the Reorganized Debtor in accordance with the Plan.

The Plan does not appoint any new officers or directors of the Debtor.  Upon the Effective Date, the Debtor shall become the Reorganized Debtor with the same officers and directors as the Debtor.

Upon certification to be filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Chapter 11 Case, the Debtor shall be deemed to be reorganized without any further action by the Debtor or the Reorganized Debtor.

H.    *Dissolution of Creditors' Committee.*

On the Effective Date, (a) the Creditors' Committee shall dissolve and its members shall be released of their respective duties, responsibilities, and obligations in connection with the Chapter 11 Case or the Plan; and (b) the retention or employment of the Creditors' Committee's professionals and agents shall be terminated, other than with respect to the filing and prosecution of applicable fee applications.

I.    *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtor and Reorganized Debtor to take all other actions that may be necessary, useful, or appropriate to consummate the Plan without any further judicial or corporate authority.

**ARTICLE V
FUNDING AND DISBURSEMENTS**

A.    *Distribution Agent.*

The Distribution Agent, on behalf of the Debtor and the Reorganized Debtor, shall make all distributions under the Plan on account of Allowed Claims against the Debtor on the Distribution Date pursuant to the terms of the Plan and Confirmation Order, *provided, however*, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Reserve. The Distribution Agent shall act at the direction of the Reorganized Debtor.

B.    *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. dollars, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Distribution Agent shall determine in its sole discretion.

C.    *Distribution for Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Holders of Allowed Claims shall be made on the Effective Date or within thirty (30) days thereof.

No Holder of a Disputed Claim shall be entitled to a distribution from the Distribution Agent, the Debtor, the Reorganized Debtor or the Estate with respect to such Disputed Claim

21

unless and until such Disputed Claim becomes an Allowed Claim, and no Holder of a Disputed Claim shall have any right to interest on such Disputed Claim. L'Occitane International shall guaranty to the Debtor the full amount of any distributions that would otherwise be payable upon any Disputed Claims if they were Allowed Claims until such time as such Disputed Claims are settled or determined by Final Order to be Allowed or not Allowed.

D.    *Objections to Claims*

Except as expressly provided herein, the Debtor (before the Effective Date) or the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. With respect to Administrative Claims, Professional Fee Claims, Secured Tax Claims, Other Secured Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims and Intercompany Claims, the Debtor and the Reorganized Debtor shall have standing to object to any such Claims. Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date, which date may be extended by the Reorganized Debtor upon Motion to the Bankruptcy Court or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Debtor and the Reorganized Debtor reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

E.    *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims.

F.    *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, requiring that the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder or establishing any other mechanisms he believes are reasonable and appropriate. The Distribution Agent reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Distribution Agent shall not be required to make distributions on any Allowed Claim if the Holder thereof has not provided all documentation, that in the Distribution Agent's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within sixty (60) days of the Distribution Agent's written requests for such documentation, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

G.    *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Distribution Agent shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Distribution Agent shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Distribution Agent shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the Holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Distribution Agent shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other Holders of Allowed Claims, in accordance with the terms of the Plan and the Confirmation Order.

H.    *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to Holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such Holders if the Distribution Agent has been notified in writing of a change of address. If the distribution to any Holder of an Allowed Claim is returned to the Distribution Agent as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section V.I of the Plan.

I.    *Unclaimed Distributions.*

If any distribution to Holders of an Allowed Claim is unclaimed or returned as undeliverable, no distribution to such Holders of an Allowed Claim shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest.  Such Unclaimed Property shall be held by the Distribution Agent in the Unclaimed Property Reserve for a period of no less than sixty (60) day; *provided*, *however*, such unclaimed or returned distributions shall not be deemed Unclaimed Property at the expiration of the 60 days unless and until the Distribution Agent has caused to be filed with the Bankruptcy Court and served on such Holders of Unclaimed Property at the address set forth in the Schedules, unless such address is superseded by a proofs of claim or transfer of claims filed pursuant to Bankruptcy Rule 3001, or at the last known address of such Holders if the Distribution Agent has been notified in writing of a change of address, a notice, identifying the distributions that were unclaimed or returned (the "Unclaimed Property Notice") and providing such Holders with a reasonable opportunity to object or respond to the release of the Unclaimed Property from the Unclaimed Property Reserve.  Once the distribution to Holders of Allowed Claims becomes Unclaimed Property, the Distribution Agent shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the

23

benefit of such Holder or Holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the Holder entitled thereto upon presentation of proper proof by such Holder of its entitlement thereto. After the expiration of the objection deadline set forth in the applicable Unclaimed Property Notice, with no response, the Holders of Allowed Claims entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Assets of the Reorganized Debtor and returned to the Reorganized Debtor. Such funds shall not be subject to the escheat laws of any state.

Nothing contained in the Plan or the Confirmation Order shall require the Debtor, the Reorganized Debtor or the Distribution Agent to attempt to locate any Holder of an Allowed Claim.

J.      *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no Holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged; provided, however, that nothing in the Plan, the Disclosure Statement (or any Order approving the same), or the Confirmation Order shall in any way impair, modify, change, alter or otherwise impact any and all obligations under Unexpired Leases, including the obligation to pay late fees, if any.

K.      *Setoffs and Recoupment.*

The Reorganized Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claim it may have against the Holder of such Claim.

L.      *Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties</u>.  The Reorganized Debtor shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor; *provided*, *however*, the Debtor shall provide notice to such Holder of such Claim at the address or email address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such Holders if the Distribution Agent has been notified in writing of a change of address, informing such Holder that its Claim is being reduced and/or disallowed as a result of the payment made by a third party.. To the extent a Holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or the Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver the

24

portion of any distribution to the Reorganized Debtor that causes such Holder's total recovery on account of such Claim from the third party and under the Plan to exceed the amount of such Claim as of the date of any such distribution under the Plan. The Reorganized Debtor and the Debtor's Estate reserve all of their rights, remedies, claims, and actions against any such Holders who fail to repay or return the excess portion of any such distribution.

2. _Claims Payable by Third Parties_.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement and notice to the Holder of such Allowed Claim, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further action, order, or approval of the Bankruptcy Court.

3. _Applicability of Insurance Policies_.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. _Assumption of Executory Contracts and Unexpired Leases._

Upon entry of the Confirmation Order, all Executory Contracts and Unexpired Leases shall be deemed assumed contingent on, and effective upon, the occurrence of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtor; (ii) previously expired or terminated pursuant to its own terms; (iii) has been assumed and assigned to a purchaser of the Debtor's assets; or (iv) was rejected pursuant to the Plan Supplement.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumption of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

Notwithstanding anything to the contrary in this Plan, the Disclosure Statement (or any Order approving the same), or the Confirmation Order, including the releases, injunctions, and exculpation provisions under Article VII of the Plan, upon assumption of an Unexpired Lease, the Debtor or Reorganized Debtor shall satisfy any accrued but unbilled amounts under such Unexpired Lease (if applicable) including, but not limited to, common area maintenance charges, taxes, and year-end adjustments, and shall remain liable for all obligations arising under an assumed Unexpired Lease including:  (a) for amounts owed or accruing under such Unexpired Lease that are unbilled or not yet due regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, utilities, and similar charges; (b) any regular or periodic adjustment or reconciliation of charges under such Unexpired Lease that are not due or have not been determined; (c) any percentage rent that comes due under such Unexpired Lease; (d) post-assumption obligations under such Unexpired Lease; and (e) any obligations to

25

indemnify the non-Debtor counterparty under such Unexpired Lease pursuant to the terms of the lease.

Notwithstanding anything to the contrary in this Plan, the Disclosure Statement (or any Order approving the same), or the Confirmation Order, including the releases, injunctions, and exculpation provisions under Article VII of the Plan, nothing shall modify the rights, if any, of any Holder of a Claim or any current or former party to an executory contract or lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or nonbankruptcy law, including, but not limited to, (a) the ability, if any, of such parties to set off or recoup a security deposit held pursuant to the terms of their lease(s) with the Debtor or the Reorganized Debtor (or any successors thereto); (b) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (c) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtor or Reorganized Debtor (or any successors thereto).

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court or the Notice, Claims and Balloting Agent by the Rejection Claim Bar Date. Notwithstanding any order, Bankruptcy Rule, or provision of the Plan or Bankruptcy Code to the contrary, to the extent that any counterparty to an Executory Contract or Unexpired Lease may be subject to a Rejection Claim Bar Date that is later than the General Bar Date, such counterparty may include Claims that arose prior to the Petition Date in any Proof of Claim filed by the Rejection Claim Bar Date, such that the counterparty shall not be required to file a Proof of Claim for such prepetition Claims by the General Bar Date. The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the five clauses set forth in Article VI.A hereof are deemed assumed as of the Effective Date. Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 4 of the Plan, which information shall be included in the Notice of the Effective Date.

C.    *Claims Based on Assumption of Executory Contracts and Unexpired Leases.*

To the extent that prior to Confirmation the Debtor has not Filed a Notice of Assumption or Notice of Rejection for all or some of its executory contracts and unexpired leases, it shall, at least twenty-one (21) days prior to the Confirmation Hearing, file a list of the Executory Contracts and Unexpired Leases it intends to assume and the associated Cure Amounts, if any, as part of its Plan Supplement and a list of the Executory Contracts and Unexpired Leases it intends to Reject as part of the Plan Supplement.  The Plan Supplement (and any further supplements or amendments thereto) shall be served upon the counterparties to the Executory Contracts and Unexpired Leases (and their counsel if having appeared in the case), all creditors and parties-in-interest.  To the extent that the counterparty to the Executory Contract or Unexpired Lease disagrees with the Cure Amounts listed in the Plan Supplement, the counterparty must file an objection within twenty-one

26

(21) days after filing of the Plan Supplement.  If a counterparty to an Executory Contract or Unexpired Lease files an objection to a Cure Amount listed in the Plan Supplement, thereby commencing a Cure Dispute, the Debtor shall pay to such counterparty the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Effective Date, with the disputed portion to be subject to the Cure Dispute Guaranty pending resolution of the Cure Dispute.  Once the parties resolve the disputed portion of a Cure Amount, the Debtor shall pay the agreed amount to the applicable counterparty within fourteen (14) days of such resolution.

Post Confirmation, the Debtor or Reorganized Debtor, as applicable, and each counterparty to an Executory Contract and Unexpired Lease subject to a Cure Dispute shall attempt to resolve any such disputes.  In the event that a Cure Dispute cannot be amicably resolved between the parties, either party may file an application with the Bankruptcy Court, on twenty-one days' notice to the other party, requesting a hearing by the Bankruptcy Court to determine the Cure Dispute.

D.    *Guaranty for Cure Disputes.*

To the extent that any Cure Dispute is resolved in favor of the counterparty to the Executory Contract or Unexpired Lease, the amount of the Cure Dispute shall be paid to the counterparty by the Debtor or Reorganized Debtor, as applicable, and L'Occitane International shall guarantee to the Debtor the full amount of such Cure Dispute.

E.    *Modifications, Amendments, Supplements, Restatements or Other Agreements.*

Unless otherwise specified, each Executory Contract and Unexpired Lease assumed, assumed and assigned or rejected by the Debtor shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, including changes made during the Chapter 11 Case.

F.    *Payments Related to Assumption of Contracts and Leases.*

Any Cure Amount shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the Cure Amount in Cash, on the Effective Date, subject to the limitations in Section VI.D. or on such other terms as the parties to such executory contracts and unexpired leases and the Debtor may otherwise agree.

## ARTICLE VII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtor), Interests,

27

and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests against and in the Debtor.

B.      *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C.      *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

D.      *Release*

1.      **Releases by the Debtor**

**Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, , for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally, and individually and collectively released, acquitted, and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights,**

28

suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any Released Party, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.  In addition to the foregoing, upon the Effective Date, the Debtor shall waive, relinquish, and release all Avoidance Actions.

2.   **Third-Party Releases**

For good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim or Interest shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, whether direct or derivative, known, or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

29

E.      *Injunction.*

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor or against any Released Party that have been released and/or exculpated under the this Plan (the "Released Claims and Interests") are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Reorganized Debtor, the Distribution Agent, the Reorganized Debtor Assets, or the Released Parties or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective Date) directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; *provided, however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

F.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1.      the Bankruptcy Court shall have entered the Confirmation Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any

30

other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.      all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.      the Exit Loan Facility shall have been effectuated and shall have been funded with the Distribution Agent;

4.      the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

5.      all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B.      *Waiver of Conditions.*

The conditions to Consummation set forth in this Article VIII of the Plan may be waived only by prior written consent of the Debtor (in consultation with the Creditors' Committee), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. Notwithstanding anything to the contrary herein, the conditions precedent set forth in Article VIII(A)(1), (3), and (4) hereof shall not be waived.  Upon the waiver or occurrence of all the conditions to Confirmation and Consummation set forth in this Article VIII of the Plan, the Debtor shall immediately declare the Effective Date and file the Notice of Effective Date.

C.      *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty (180) days following the Confirmation Date, unless such time shall have been extended by order of the Bankruptcy Court on request by the Debtor, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any Holders or any other Entity; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holder of any Claim or any other Entity in any respect.

## ARTICLE IX
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification, Amendments or Revocation.*

Except as otherwise specifically provided in the Plan, the Plan Proponents reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation

consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Plan Proponents expressly reserve their rights, to revoke or withdraw, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. If the Plan Proponents revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtor, any Holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, any Holder or any other Entity

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## ARTICLE X
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case pursuant to sections 105(a) and 1142 of the Bankruptcy Code; *provided, however*, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all present and former Holders of Claims or Interests, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor each of respective successors and assigns of the foregoing persons and Entities.

32

B.    *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all Holders receiving distributions pursuant to the Plan and all other parties-in-interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor, with respect to the Plan, the Disclosure Statement, or Plan Supplement, if any, shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the Holders of Claims and Interests or each other before the Effective Date.

D.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

E.    *Notices.*

To be effective, all notices, requests, and demands to or upon the Debtor shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

> The Debtor:
>
> L'Occitane, Inc.
> Attn:  Yann Tanini and Ross Novak
> 111 West 33rd Street, 20th floor,
> New York, NY 10120
>
> with a mandated copy (which shall not constitute notice) to:
>
> Counsel to Debtor and Debtor in Possession
>
> Mark E. Hall, Esq. (mhall@foxrothschild.com)
> Martha B. Chovanes, Esq. (mchovanes@foxrothschild.com)
> Michael R. Herz, Esq. (mherz@foxrothschild.com)
> FOX ROTHSCHILD LLP

33

49 Market Street
Morristown, New Jersey 07960
Telephone:  (973) 992-4800
Facsimile:  (973) 992-9125

Counsel to the Creditors' Committee

Warren A. Usatine, Esq. (wusatine@coleschotz.com)
Justin Alberto, Esq. (jalberto@coleschotz.com)
Seth Van Aalten, Esq. (svanaalten@coleschotz.com)
COLE SCHOTZ, P.C.
25 Main Street
Hackensack, NJ | 07601
Telephone: (201) 489-3000
Facsimile (201) 678-6233

F.      *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.      *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://cases.stretto.com/LOccitane or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.njb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H.      *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable

34

pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

      I.    *Exemptions from Certain Transfer Taxes.*

To the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) all sale transaction consummated by the Debtor and approved by the Bankruptcy Court on and after Confirmation through and including the Effective Date, including any transfers effectuated under the Plan, (d) any assumption, assignment or sale by Debtor of their interest in unexpired leases of nonresidential real property or executory contracts pursuant to 365(a) of the Bankruptcy Code, and (e) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

      J.    *Closing of Chapter 11 Case.*

The Reorganized Debtor shall promptly, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Case.

      K.    *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtor.

      L.    *No Waiver.*

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtor.

M.    *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any matter affects the terms, provisions or interpretation of the Plan.

N.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

Dated:  August 20, 2021

Respectfully Submitted,

L'OCCITANE, INC.                              COLE SCHOTZ, P.C.


/s/ Yann Tanini                              /s/ Warren A. Usatine
By: Yann Tanini                              By: Warren A. Usatine
Regional Managing Director                   Counsel to the Committee

**<u>EXHIBIT B</u>**

**Blackline**

125532939.1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**FOX ROTHSCHILD LLP**
49 Market St.
Morristown, NJ 07960
Mark E. Hall, Esq.
Martha B. Chovanes, Esq.
Michael R. Herz, Esq.
mhall@foxrothschild.com
mchovanes@foxrothschild.com
mherz@foxrothschild.com
Telephone:  (973) 992-4800
Facsimile:  (973) 992-9125
*Counsel for L'Occitane, Inc.*

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Justin R. Alberto, Esq. (admitted *pro hac vice*)
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536

*Counsel for the Official Committee of Unsecured Creditors*

| | |
|---|---|
| In Re: | |
| L'OCCITANE, INC., | Chapter 11 |
| Debtor. | Case No. 21-10632 (MBK) |
| | Judge:  Michael B. Kaplan, Chief Judge |

# ~~FIRST~~ SECOND AMENDED JOINT PLAN OF REORGANIZATION OF L'OCCITANE, INC.
## AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT, YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN, OR THE TERMS OF THIS PLAN FOR ANY PURPOSE.**

---

Dated: ~~July 15~~August 20, 2021

**FOX ROTHSCHILD LLP**

Attorneys for Debtor and Debtor in Possession

-and-

**COLE SCHOTZ P.C.**

Counsel for the Official Committee of Unsecured Creditors

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARTICLE I - DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
      OF TIME AND GOVERNING LAW ............................................... 1
    A.    DEFINED TERMS. ......................................................................... 1
    B.    RULES OF INTERPRETATION AND COMPUTATION OF TIME. ........... ~~10~~11
    C.    GOVERNING LAW. ...................................................................... 11
    D.    REFERENCE TO MONETARY FIGURES. ...................................... 11

ARTICLE II - ADMINISTRATIVE CLAIMS, AND PRIORITY TAX CLAIMS ................ ~~11~~12
    A.    ADMINISTRATIVE CLAIMS. ...................................................... ~~11~~12
    B.    PRIORITY TAX CLAIMS. ............................................................ 13
    C.    STATUTORY FEES. ..................................................................... ~~13~~14

ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS AND
      INTERESTS ............................................................................... 14
    A.    CLASSIFICATION OF CLAIMS AND INTERESTS. ...................... 14
    B.    SUMMARY OF CLASSIFICATION. ............................................ 14
    C.    TREATMENT OF CLAIMS AND INTERESTS. ............................ ~~14~~15
    D.    SPECIAL PROVISION GOVERNING CLAIMS THAT ARE NOT
        IMPAIRED. .............................................................................. 18
    E.    CONFIRMATION PURSUANT TO SECTIONS 1129(A)(10) AND
        1129(B) OF THE BANKRUPTCY CODE. .................................... 18
    F.    ELIMINATION OF VACANT CLASSES. ...................................... 18
    G.    CONTROVERSY CONCERNING IMPAIRMENT. .......................... 18
    H.    ACCEPTANCE OR REJECTION OF THE PLAN. .......................... ~~18~~19

ARTICLE IV - MEANS FOR IMPLEMENTATION OF THE PLAN ........................ 19
    A.    VESTING OF ASSETS. ............................................................... 19
    B.    SOURCES OF CONSIDERATION FOR PLAN DISTRIBUTIONS. ............. 19
    C.    EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS. ............. 19
    D.    EXEMPTION FROM CERTAIN TAXES AND FEES. ..................... ~~19~~20
    E.    TREATMENT OF CAUSES OF ACTION. .................................... ~~19~~20
    F.    ABILITY TO SEEK AND OBTAIN DISCOVERY. ........................ 20
    G.    DEBTOR'S EXISTENCE. ............................................................ 20
    H.    DISSOLUTION OF CREDITORS' COMMITTEE. ........................ ~~20~~21
    I.    CORPORATE AUTHORITY. ........................................................ ~~20~~21

ARTICLE V - FUNDING AND DISBURSEMENTS ............................................ ~~20~~21
    A.    DISTRIBUTION AGENT. ............................................................ ~~20~~21
    B.    CASH PAYMENTS. ..................................................................... 21
    C.    DISTRIBUTION FOR ALLOWED CLAIMS. ................................ 21
    D.    OBJECTIONS TO CLAIMS ......................................................... ~~21~~22

E.      INTEREST AND CHARGES. ................................................... ~~21~~22
F.      COMPLIANCE WITH TAX REQUIREMENTS. ....................... ~~21~~22
G.      FRACTIONAL DOLLARS: DE MINIMIS DISTRIBUTIONS. ......................... 22
H.      DELIVERY OF DISTRIBUTIONS TO HOLDERS OF ALLOWED
        CLAIMS. ................................................................................... ~~22~~23
I.      UNCLAIMED DISTRIBUTIONS. ........................................... ~~22~~23
J.      NO PENALTY CLAIMS. .......................................................... ~~23~~24
K.      SETOFFS AND RECOUPMENT. ............................................. ~~23~~24
L.      CLAIMS PAID OR PAYABLE BY THIRD PARTIES. ............. ~~23~~24

ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ....................................................................................... ~~24~~25
A.      ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES. ...................................................................................... ~~24~~25
B.      CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR
        UNEXPIRED LEASES. ................................................................ ~~25~~26
C.      CLAIMS BASED ON ASSUMPTION OF EXECUTORY CONTRACTS
        AND UNEXPIRED LEASES. ....................................................... ~~25~~26
D.      GUARANTY FOR CURE DISPUTES. ....................................... ~~26~~27
E.      MODIFICATIONS,         AMENDMENTS,         SUPPLEMENTS,
        RESTATEMENTS OR OTHER AGREEMENTS. ......................... ~~26~~27
F.      PAYMENTS RELATED TO ASSUMPTION OF CONTRACTS AND
        LEASES. ...................................................................................... ~~26~~27

ARTICLE VII - SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
        PROVISIONS ............................................................................. ~~26~~27
A.      SETTLEMENT, COMPROMISE, AND RELEASE OF CLAIMS AND
        INTERESTS. ............................................................................... ~~26~~27
B.      LIABILITIES TO, AND RIGHTS OF, GOVERNMENTAL UNITS. ............ ~~27~~28
C.      EXCULPATION. .......................................................................... ~~27~~28
D.      RELEASE ..................................................................................... ~~27~~28
E.      INJUNCTION. ............................................................................. ~~28~~30
F.      TERM OF INJUNCTIONS OR STAYS. .................................... ~~29~~30

ARTICLE VIII - CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ... ~~29~~30
A.      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ...... ~~29~~30
B.      WAIVER OF CONDITIONS. ...................................................... ~~30~~31
C.      EFFECT OF FAILURE OF CONDITIONS. ................................ ~~30~~31

ARTICLE IX - MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN
        ..................................................................................................... ~~30~~31
A.      MODIFICATION, AMENDMENTS OR REVOCATION. ........... ~~30~~31
B.      EFFECT OF CONFIRMATION ON MODIFICATIONS. .............. ~~31~~32

ARTICLE X - RETENTION OF JURISDICTION ................................................. ~~31~~32

2

ARTICLE XI - MISCELLANEOUS PROVISIONS ............................................................. 3132
    A.      IMMEDIATE BINDING EFFECT. .............................................................. 3132
    B.      ADDITIONAL DOCUMENTS. ................................................................... 3133
    C.      RESERVATION OF RIGHTS. .................................................................... 3133
    D.      SUCCESSORS AND ASSIGNS. ................................................................ 3233
    E.      NOTICES. .................................................................................................. 3233
    F.      ENTIRE AGREEMENT ............................................................................. 3334
    G.      EXHIBITS. ................................................................................................. 3334
    H.      SEVERABILITY OF PLAN PROVISIONS. ............................................. 3334
    I.      EXEMPTIONS FROM CERTAIN TRANSFER TAXES. ........................... 3335
    J.      CLOSING OF CHAPTER 11 CASE. ....................................................... 3435
    K.      NO ADMISSION AGAINST INTEREST. ................................................. 3435
    L.      NO WAIVER. ............................................................................................ 3435
    M.      HEADINGS. .............................................................................................. 3435
    N.      CONFLICTS. ............................................................................................. 3436

## INTRODUCTION

L'Occitane, Inc., as debtor and debtor in possession, in the above-captioned Chapter 11 Case ("Debtor") and the Official Committee of Unsecured Creditors of L'Occitane, Inc. (the "Creditors' Committee" and with the Debtor, the "Plan Proponents") jointly propose this ~~first~~ second amended chapter 11 plan (as may be amended from time to time, the "Plan"). Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, and assets, as well as a summary and description of this Plan and certain related matters. The Debtor and the Creditors' Committee are the proponents of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.    Defined Terms.

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "*Administrative Claim*" means any Claim against the Debtor or its Estate for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date in connection with preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises), including Professional Fee Claims (defined below) and (b) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of the Judicial Code.

2.    "*Administrative Claim Bar Date*" means the date that is thirty (30) days after the Notice of Effective Date is Filed.

3.    "*Affiliate*" means, with respect to any specified Entity, any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such specified Entity. For purposes of this definition, "control" (and any similar term) means the power of one or more Entities to direct, or cause the direction of, the affairs of another Entity by reason of ownership of voting stock or by contract or otherwise.

4.    "*Allowed*" means, with respect to a Claim against or Interest in the Debtor, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or a request for a payment of an Administrative Claim, as applicable, that is Filed on or before the Administrative Claims Bar Date, the General Bar Date, the Governmental Claim Bar Date, or the Rejection Claim Bar Date (or for which Claim under the Plan, Bankruptcy Code, or pursuant to a Final Order, a Proof of Claim or request for payment of Administrative Claim is not required to be Filed), as applicable; (b) a Claim that is listed in Debtor's Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest allowed pursuant to the Plan or Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in (a) and (b) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such

Claim, no objection to the allowance thereof is Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is Filed and the Claim has been allowed by a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed is not considered Allowed and any person or entity holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.  Except as otherwise specified in the Plan, Final Order, or as otherwise agreed by the Debtor, the amount of an Allowed Claim shall not include interest or fees on such Claim accruing from and after the Petition Date.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been ~~timely~~ Filed, is not considered Allowed and shall be expunged without further action by the Debtor or the Reorganized Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

5.      "*Assets*" means any and all of the right, title and interest of the Debtor in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Debtor, as the case may be, including, without limitation, the Debtor's Estate.

6.      *"Assumed Executory Contracts and Unexpired Leases"* means the executory contracts and unexpired leases assumed either through a notice of assumption pursuant to the Procedures Order (defined below) or pursuant to the Plan or Plan Supplement.

7.      "*Avoidance Actions*" means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

8.      "*Bankruptcy Code*" means title 11 of the United States Code.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of any withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of New Jersey.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

2

11.   "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

12.   "*Cash*" means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

13.   "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any state law fraudulent transfer claim; and subject, however, to any releases provided in this Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court. For the avoidance of doubt, the Causes of Action shall not include any Causes of Action against the Released Parties.

14.   "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code administered under case number 21-10632 (MBK).

15.   "*Claim*" means any claim against the Estate, as such term is defined in section 101(5) of the Bankruptcy Code.

16.   "*Class*" means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtor as set forth in Article III hereof.

17.   "*Cole Schotz*" means Cole Schotz P.C., counsel for the Official Committee of Unsecured Creditors of L'Occitane, Inc.

18.   "*Collateral*" means any property or interest in property in the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

19.   "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

20.   "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

21.   "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

22. "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

23. "***Consummation***" means the occurrence of the Effective Date.

24. "***Contingent Claim***" means any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

25. "***Creditor***" has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

26. "***Creditors' Committee***" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee [See Docket No. 110]

27. "***Cure Amount***" means the payment of Cash or the distribution of other property (as the Debtor or Reorganized Debtor, as applicable, and the counterparty to an executory contract or unexpired lease of the Debtor may agree or the Bankruptcy Court may order) necessary to (a) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease and (b) permit the Debtor to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

28. "***Cure Dispute***" means any amount in dispute as between the Debtor or Reorganized Debtor, as applicable, and a counterparty to an Executory Contract or Unexpired Lease that has not been resolved prior to Confirmation.

29. "***Cure Dispute Guaranty***" means the guaranty provided by L'Occitane International to Debtor to pay any Cure Amount subject to a Cure Dispute in the event that such Cure Dispute is determined in favor of the counterparty to an Executory Contract or Unexpired lease that is assumed.

30. "***Debtor***" means L'Occitane, Inc., the debtor and debtor in possession in the Chapter 11 Case.

31. "***Disclosure Statement***" means the First Amended Disclosure Statement for the Plan of Reorganization of L'Occitane, Inc., pursuant to Chapter 11 of the Bankruptcy Code, dated July 15, 2021, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

32. "***Disputed***" means, any Claim against or Interest in the Debtor that is (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Debtor in any litigation or contested matter and as to which no Final Order resolving

4

such litigation or contested matter has been entered. A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

33.    "***Disputed Claim Guaranty***" means the guaranty provided by L'Occitane International to Debtor to pay any Disputed Claims in the event that such Disputed Claim is determined in favor of the Holder of the Disputed Claim.

34.    "***Distribution Agent***" means, from the Effective Date, Stretto, who shall make and facilitate distributions required by this Plan.

35.    "***Distribution Date***" means, with respect to (a) any Claim that is Allowed as of the Effective Date, a date that is not more than thirty (30) days after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date not more than thirty (30) after the date on which such Claim becomes Allowed.

36.    "***Effective Date***" means, with respect to the Plan, the date that is a Business Day selected by the Debtor, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or within thirty (30) days of the Effective Date.

37.    "***Entity***" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

38.    "***Estate***" means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

39.    "***Exculpated Claim***" means any Cause of Action, arising during the period commencing on the Petition Date through the closing of the Chapter 11 Case, related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Case; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Case, the Disclosure Statement, the Plan, and/or the Plan Supplement, if any; (c) the formulation, preparation, or negotiation of any documents with respect to, or the consummation of, any sale of the Debtor's assets during the Chapter 11 Case, if any; (d) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the foregoing subsections (a), (b), or (c); (e) the pursuit of Consummation; and/or (f) the filing, administration, and/or implementation of the Chapter 11 Case, the Plan, or the distribution of property in connection therewith or thereunder.

40.    "***Exculpated Party***" means each of: (a) the Debtor; (b) L'Occitane International (except for the guarantees provided by L'Occitane International prepetition, the Cure Dispute Guaranty(ies), and the Disputed Claim Guaranty(ies), which shall not be exculpated); (c) the Creditors' Committee; (d) the members and former member(s) of the Creditors' Committee solely in their capacities as such or, with respect to former member(s) of the Creditors' Committee, in their capacity as such prior to resigning from the Creditors' Committee; and (e) with respect to

5

each of the foregoing Entities, such Entity's current officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors, and assigns, but only to the extent that such party served in such a capacity during the Chapter 11 Case.

41.    "*Executory Contract*" means a contract to which a Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

42.    "*Exit Loan Facility"* shall mean an unsecured loan provided by L'Occitane International. The Exit Loan Facility shall provide adequate working capital in an amount agreed upon by the Debtor and L'Occitane International that is sufficient to make payments of all Allowed Claims under the Plan.

43.    "*Exit Loan Facility Documents"* shall mean the agreement(s) governing the Exit Loan Facility and related notes, guarantees or other similar documents, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time.

44.    "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

45.    "*Final Distribution*" means the distribution under this Plan which, (a) after giving effect to such distribution, results in full payment under this Plan or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

46.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek certiorari has expired and no request for reconsideration or relief from judgment, appeal, or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

47.    "*Fox Rothschild*" shall mean Fox Rothschild LLP, counsel to the Debtor and Debtor in Possession in the Chapter 11 Case.

48.    "*General Bar Date*" means May 7, 2021.

49.    "*General Unsecured Claim*" means any Claim against a Debtor that is (i) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, a Subordinated Claim, or an Interest.  For the avoidance of doubt, General Unsecured Claims include Rejection Claims.

6

50.     "***Governmental Claim***" means any Claim against any Debtor Filed by a Governmental Unit.

51.     "***Governmental Claim Bar Date***" means July 26, 2021.

52.     "***Governmental Unit***" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

53.     "***Holder***" means an Entity holding a Claim against or an Interest (defined below) in the Debtor.

54.     "***Impaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55.     "***Interests***" means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferrable and whether fully vested or vesting in the future, including any option, warrant, or other right, contractual or otherwise, to acquire such interest in the Debtor, that existed immediately before the Effective Date and all rights arising with respect thereto.

56.     "***Interim Compensation Order***" means the *Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 235].

57.     "***Intercompany Claim***" means any Claim against a Debtor held by L'Occitane International or an affiliate of the Debtor.

58.     "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

59.     "***Lien***" has the same meaning as set forth in section 101(37) of the Bankruptcy Code.

60.     "***Local Rules***" means the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

61.     "***L'Occitane International***" means L'Occitane International, S.A.

62.     "***Notice***, ***Claims and Balloting Agent***" means Stretto.

63.     "***Notice of Effective Date***" means a notice to be Filed with the Bankruptcy Court by the Debtor upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan.

64.    "***Ordinary Course Professional Order***" means the Order Pursuant to 11 U.S.C. §§ 105(a), 327, 330, and 503(b) Authorizing Debtor to Employ and Compensate Professionals Used in the Ordinary Course of Business [Docket No. 204].

65.    "***Other Priority Claims***" means any Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, Professional Fee Claim, or a Priority Tax Claim.

66.    "***Other Secured Claims***" means any Secured Claim that is not a Secured Tax Claim.

67.    "***Person***" means a person as such term is defined in section 101(41) of the Bankruptcy Code.

68.    "***Petition Date***" means January 26, 2021, the date on which the Debtor commenced the Chapter 11 Case.

69.    "***Plan***" means this Plan of Reorganization of L'Occitane, Inc., including all appendices, exhibits, schedules and supplements hereto, pursuant to Chapter 11 of the Bankruptcy Code, as modified, amended or supplemented from time to time.

70.    "***Plan Proponents***" means the Debtor and the Creditors' Committee, jointly.

71.    "***Plan Supplement***" means a supplement or supplements to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to implementation of the Plan, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules, to be filed by the Debtor twenty-one (21) days before the Confirmation Hearing on notice to all Creditors and parties-in-interest, and which includes the following, as applicable: (a) the Exit Loan Facility Documents; (b) a list of the Executory Contracts and Unexpired Leases the Debtor intends to assume pursuant to Article VI of the Plan along with the proposed Cure Amounts; and (c) a list of the Executory Contracts and Unexpired Leases the Debtor intends to reject under Article VI the Plan..

72.    "***Priority Tax Claim***" means any Claim against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

73.    "***Procedures Order***" means the *Order Authorizing and Approving Procedures for Rejection and Assumption of Executory Contracts and Unexpired Leases* entered by the Court on January 28, 2021 [Docket No. 50].

74.    "***Professional***" means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement

8

by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after application or motion on notice under that section of the Bankruptcy Code.

75.    "*Professional Fee Claim*" means a Claim for any accrued but unpaid fees and expenses owed to a Professional on or after the Petition Date pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code; provided that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional. To the extent that there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered a Professional Fee Claim.

76.    "*Professional Fee Claim Estimate*" means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Article II of the Plan.

77.    "*Professional Fee Claim Reserve*" means the reserve established by the Debtor and maintained by the Debtor or Reorganized Debtor pursuant to the terms of this Plan and the Confirmation Order to be distributed to Holders of Allowed Professional Fee Claims.

78.    "*Proof of Claim*" means a written proof of Claim that is Filed against the Debtor in the Chapter 11 Case.

79.    "*Proof of Interest*" means a written proof of Interest that is Filed against the Debtor in the Chapter 11 Case.

80.    "*Rejected Executory Contract or Unexpired Lease*" means any executory contract or unexpired lease rejected either through a notice of rejection pursuant to the Procedures Order or pursuant to a Plan Supplement.

81.    "*Rejection Claim*" means a Claim against the Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

82.    "*Rejection Claim Bar Date*" means the later of (a) the General Bar Date or (b) 5:00 p.m. ET on the day that is thirty (30) days after the Order rejecting the Executory Contract or Unexpired Lease is entered on the docket, or (c) such other date as established pursuant to Bankruptcy Court Order.

83.    "*Released Party*" means (a) the Debtor; (b) the Creditors' Committee; (c) the members of the Creditors' Committee solely in their capacities as members of the Committee, and (d) L'Occitane International, (except for the guarantees provided by L'Occitane International prepetition, the Cure Dispute Guaranty(ies), and the Disputed Claim Guaranty(ies), which shall not be released), and each such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacity as such.

9

84.     *"Releasing Party"* means the Holder of a Claim or Interest.

85.     *"Reorganized Debtor"* means post-Effective Date L'Occitane, Inc.

86.     "*Retained Causes of Action*" means any Cause of Action other than Avoidance Actions and any other Cause of Action that is expressly subject to the release and exculpation provisions of this Plan.

87.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

88.     "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or (b) of the Bankruptcy Code Allowed as such pursuant to the Plan.

89.     "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

90.     "*Tax Code*" means the Internal Revenue Code of 1986, as amended.

91.     *"Taxing Authority"* means all federal and state taxing agencies.

92.     *"Third-Party Release"* shall have the meaning ascribed to it in Section VII.D.2 of the Plan.

93.     "*Unclaimed Property*" means any distribution to any Creditor under this Plan that is unclaimed sixty (60) days following the date of such distribution under this Plan.

94.     "*Unclaimed Property Reserve*" means any Unclaimed Property reserved for a period of sixty (60) days by the Distribution Agent on behalf of Holders of Unclaimed Property.

95.     "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

96.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

97.     "*U.S. Trustee*" means the United States Trustee for Region 3.

10

B.      *Rules of Interpretation and Computation of Time.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

C.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

    A.    *Administrative Claims.*

    1.    <u>Administrative Claims</u>

Except to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment with respect to such Administrative Claim, each Holder of an Allowed Administrative Claim will be paid in full in Cash on the earlier of the date that is (a) as soon as practicable after the date such Allowed Administrative Claim becomes due in the ordinary course of business in accordance with the terms and conditions of the particular transaction, contract, or other agreement giving rise to such Allowed Administrative Claim, (b) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (c) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

Any claimants asserting an Administrative Claim must file its claim with the Bankruptcy Court on or before the Administrative Claim Bar Date, which is thirty (30) days after the Notice of Effective Date is Filed; however, counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to Article VI of the Plan need not file an Administrative Claim for any Cure Amounts listed in the Plan Supplement as due under such Executory Contracts and Unexpired Lease or for any amount subject to a Cure Dispute.

    2.    <u>Professional Fee Claims</u>

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date (with parties-in-interest having twenty-one (21) days to file objections, if any, to such applications); *provided, however* that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim.

    3.    <u>Professional Fee Claim Reserve</u>

On the Effective Date, the Reorganized Debtor shall establish and fund the Professional Fee Claim Reserve with Cash equal to 110% of the Professional Fee Estimate that has not already

been filed with the Bankruptcy Court. The Professional Fee Claim Reserve shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estate of the Debtor or the Reorganized Debtor. No Liens, Claims, or Interests shall encumber the Professional Fee Claim Reserve in any way. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Professional Fee Claim Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed but not more than thirty (30) days after allowance. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Claim Reserve shall promptly be released to the Reorganized Debtor without any further action or order of the Court.

4.   Professional Fee Claims Estimate

Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtor or the Creditors' Committee through the Effective Date and shall deliver such good faith estimate to the Debtor no later than five (5) business days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtor or Reorganized Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

5.   Post Effective Date Fees and Expenses.

Except as otherwise provided in the Plan, on and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall, in the ordinary course of business without any further notice or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by Professionals retained by the Debtor, the Reorganized Debtor, or the Creditors' Committee (which shall be limited to the fees and expenses incurred in connection with the preparation, filing, and prosecution of the Creditors' Committee's Professionals' fee applications), as applicable. Upon the Effective Date, the requirement that Professionals comply with sections 327 through 331, 363 and 1103 of the Bankruptcy Code after such date shall terminate, and the Debtor or Reorganized Debtor, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtor, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtor in the ordinary course of business.

B.   *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed

13

Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive, at the option of the Reorganized Debtor, one of the following treatments: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (b) such other treatment as may be agreed upon by such Holder and the Reorganized Debtor or otherwise determined by order of the Bankruptcy Court.  Allowed Priority Tax Claims will be paid on or as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Priority Tax Claim against the Debtor becomes an Allowed Priority Tax Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

C.      *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtor on the Effective Date. On and after the Effective Date, the Reorganized Debtor shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) payment of all Quarterly Fees (as defined below) for the Chapter 11 Case until the entry of a final decree or until such Chapter 11 Case is closed or dismissed.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. All Claims and Interests, except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as set forth below.

B.      *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Deemed to Accept |

| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
|---|---|---|---|
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Creditors | Unimpaired | Deemed to Accept |
| 5 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Interests | Unimpaired | Deemed to Accept |

C.     *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtor, the treatment provided for the Holders of such Allowed Claims or Allowed Interests within each class is specified below:

   1.   Class 1 – Secured Tax Claims

        i.     *Classification*:  Class 1 consists of all Secured Tax Claims.

               *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, and to the extent such Secured Tax Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Secured Tax Claim, each Holder thereof shall receive, at the option of the Reorganized Debtor: (i) payment in full in Cash of the due and unpaid portion of its Secured Tax Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) as soon as practicable after the date such Allowed Secured Tax Claim becomes due and payable; (ii) the collateral securing its Allowed Secured Tax Claim; (iii) Reinstatement of its Allowed Secured Tax Claim; or (iv) such other treatment rendering its Allowed Secured Tax Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

        ii.    *Voting*:  Class 1 is Unimpaired by the Plan, and each Holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

   2.   Class 2 – Other Secured Claims

        i.     *Classification*:  Class 2 consists of all Other Secured Claims.

        ii.    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, and to the extent such Other Secured Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement,

15

release, and discharge of, and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the Debtor: (i) payment in full in Cash of the due and unpaid portion of its Other Secured Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) as soon as practicable after the date such Allowed Other Secured Claim becomes due and payable; (ii) the collateral securing its Allowed Other Secured Claim; (iii) reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

iii. *Voting*:  Class 2 is Unimpaired by the Plan, and each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. <u>Class 3 – Other Priority Claims</u>

i. *Classification*: Class 3 consists of all Other Priority Claims.

ii. *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, and to the extent such Other Priority Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive (a) Cash in an amount equal to the due and unpaid portion of such Allowed Other Priority Claim on the later of (i) the Effective Date (or as soon thereafter as reasonably practicable) or (ii) as soon as practicable after the date such Allowed Other Priority Claim becomes due in the ordinary course of business in accordance with the terms and conditions of the particular transaction, contract, or other agreement giving rise to such Allowed Other Priority Claim; (b) such other treatment to render such Other Priority Claim Unimpaired under section 1124 of the Bankruptcy Code; or (c) such other treatment as such Holder may agree to or otherwise permitted by section 1129(a)(9) of the Bankruptcy Code.

iii. *Voting*:  Class 3 is Unimpaired by the Plan, and each Holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – General Unsecured Claims</u>

 i.  *Classification*:  Class 4 consists of all General Unsecured Claims

 ii.  *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, and to the extent such General Unsecured Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed General Unsecured Claim, each Holder thereof shall receive (a) Cash in an amount equal to the due and unpaid portion of such Allowed General Unsecured Claim on the later of (i) the Effective Date  or (ii) the first business day after the date that is thirty (30) calendar days after the date such  General Unsecured Claim becomes an Allowed General Unsecured Claim; (b) such other treatment as such Holder may agree to.

 iii.  *Voting*:  Class 4 is Unimpaired by the Plan, and each Holder of a Class 4 General Unsecured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – Intercompany Claims</u>

 i.  *Classification*:  Class 5 consists of all Intercompany Claims.

 ii.  *Treatment*:   Except to the extent that a Holder of an Allowed Intercompany Claim agrees to less favorable treatment, and to the extent such Claim has not already been paid in full during the Chapter 11 Case, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Intercompany Claim, each Holder thereof shall receive (a) Cash in an amount equal to the due and unpaid portion of such Allowed Intercompany Claim on the later of (i) the Effective Date (or as soon thereafter as reasonably practicable) or (ii) as soon as practicable after the date such Claim becomes an Allowed Intercompany Claim; (b) such other treatment to render such Allowed Intercompany Claim Unimpaired under section 1124 of the Bankruptcy Code; or (c) such other treatment as such Holder may agree to or otherwise permitted by section 1129(a)(9) of the Bankruptcy Code.  With respect to the Allowed Intercompany Claim of International in the amount of approximately $20 million, on the Effective Date, such loan claim shall become part of the unsecured Exit Loan Facility.

17

iii.   *Voting*:  Class 5 is Unimpaired by the Plan, and each Holder of a Class 5 Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.   Class 6—Interests

i.   *Classification*:  Class 6 consists of all Interests of L'Occitane Inc., which are 100% held by L'Occitane International, S.A.

ii.   *Treatment*:  On the Effective Date, Interests in the Debtor will be retained and held by the current Interest Holders.

iii.   *Voting*:  Class 6 is Unimpaired by the Plan, and each Holder of a Class 6 Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 6 Interests are not entitled to vote to accept or reject the Plan.

D.   *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights in respect of any Claims or Interests that are not Impaired, including all rights of Debtor in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

E.   *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) is satisfied for purposes of Confirmation because there are no Classes that are Impaired under the Plan. The Debtor reserves the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129 of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.   *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan.

G.   *Controversy Concerning Impairment.*

18

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.    *Acceptance or Rejection of the Plan.*

 1. Voting Classes

No Classes are Impaired and accordingly, no Classes are entitled to vote on the Plan.

 2. Presumed Acceptance of the Plan

Pursuant the Bankruptcy Code, Classes 1, 2, 3, 4, 5, and 6 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

 3. Presumed Rejection of the Plan

No Classes are deemed to have rejected the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all the Debtor's Assets shall immediately vest in the Reorganized Debtor.

B.    *Sources of Consideration for Plan Distributions.*

Distributions under the Plan will be funded by the Reorganized Debtor's Cash on hand on the Effective Date and an Exit Loan Facility provided by L'Occitane International. On or before the Effective Date, the Debtor shall fund the Professional Fee Claim Reserve, and shall provide sufficient cash funds from the Exit Loan Facility to the Distribution Agent to provide for payment of Allowed Claims under the Plan.

C.    *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtor and its directors, members, trustees, officers, and managers are and, after the Effective Date, the Reorganized Debtor and its directors, members, trustees, officers, and managers are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

D.     *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

E.     *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan or pursuant to a Bankruptcy Court order, the Debtor reserves and assigns to the Reorganized Debtor, any and all Retained Causes of Action, whether arising before or after the Petition Date, and preserves the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Retained Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, if any, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Reorganized Debtor will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

F.     *Ability to Seek and Obtain Discovery.*

From and after the Effective Date, the Reorganized Debtor shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

G.     *Debtor's Existence.*

From and after the Effective Date, the Debtor shall continue in existence as a separate legal entity, with all the powers of a corporation pursuant to the applicable law in its state of incorporation for all purposes.  After the Effective Date the Reorganized Debtor shall exist pursuant to the same organizational documents that were in effect prior to the Debtor's Petition Date. Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Reorganized Debtor without any requirement of further action by any Debtor. On and after the Effective Date, the Debtor's remaining assets and affairs shall be administered and managed by the Reorganized Debtor in accordance with the Plan.

The Plan does not appoint any new officers or directors of the Debtor.  Upon the Effective Date, the Debtor shall become the Reorganized Debtor with the same officers and directors as the Debtor.

Upon certification to be filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Chapter 11 Case, the Debtor shall be deemed to be reorganized without any further action by the Debtor or the Reorganized Debtor.

H.    *Dissolution of Creditors' Committee.*

On the Effective Date, (a) the Creditors' Committee shall dissolve and its members shall be released of their respective duties, responsibilities, and obligations in connection with the Chapter 11 Case or the Plan; and (b) the retention or employment of the Creditors' Committee's professionals and agents shall be terminated, other than with respect to the filing and prosecution of applicable fee applications.

I.    *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtor and Reorganized Debtor to take all other actions that may be necessary, useful, or appropriate to consummate the Plan without any further judicial or corporate authority.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A.    *Distribution Agent.*

The Distribution Agent, on behalf of the Debtor and the Reorganized Debtor, shall make all distributions under the Plan on account of Allowed Claims against the Debtor on the Distribution Date pursuant to the terms of the Plan and Confirmation Order, *provided, however*, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Reserve. The Distribution Agent shall act at the direction of the Reorganized Debtor.

B.    *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. dollars, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Distribution Agent shall determine in its sole discretion.

C.    *Distribution for Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Holders of Allowed Claims shall be made on the Effective Date or within thirty (30) days thereof.

No Holder of a Disputed Claim shall be entitled to a distribution from the Distribution Agent, the Debtor, the Reorganized Debtor or the Estate with respect to such Disputed Claim

unless and until such Disputed Claim becomes an Allowed Claim, and no Holder of a Disputed Claim shall have any right to interest on such Disputed Claim. L'Occitane International shall guaranty to the Debtor the full amount of any distributions that would otherwise be payable upon any Disputed Claims if they were Allowed Claims until such time as such Disputed Claims are settled or determined by Final Order to be Allowed or not Allowed.

D.    *Objections to Claims*

Except as expressly provided herein, the Debtor (before the Effective Date) or the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. With respect to Administrative Claims, Professional Fee Claims, Secured Tax Claims, Other Secured Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims and Intercompany Claims, the Debtor and the Reorganized Debtor shall have standing to object to any such Claims. Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date, which date may be extended by the Reorganized Debtor upon Motion to the Bankruptcy Court or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Debtor and the Reorganized Debtor reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

E.    *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims.

F.    *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, requiring that the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder or establishing any other mechanisms he believes are reasonable and appropriate. The Distribution Agent reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Distribution Agent shall not be required to make distributions on any Allowed Claim if the Holder thereof has not provided all documentation, that in the Distribution Agent's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within sixty (60) days of the Distribution Agent's written requests for such documentation, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

G.     *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Distribution Agent shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Distribution Agent shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Distribution Agent shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the Holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Distribution Agent shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other Holders of Allowed Claims, in accordance with the terms of the Plan and the Confirmation Order.

H.     *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to Holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such Holders if the Distribution Agent has been notified in writing of a change of address. If the distribution to any Holder of an Allowed Claim is returned to the Distribution Agent as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section V.I of the Plan.

I.     *Unclaimed Distributions.*

If any distribution to Holders of an Allowed Claim is unclaimed or returned as undeliverable, ~~such~~ no distribution to such Holders of an Allowed Claim shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest.  Such Unclaimed Property shall be held by the Distribution Agent in the Unclaimed Property Reserve for a period of no less than sixty (~~60) days~~60) day; *provided, however*, such unclaimed or returned distributions shall not be deemed Unclaimed Property at the expiration of the 60 days unless and until the Distribution Agent has caused to be filed with the Bankruptcy Court and served on such Holders of Unclaimed Property at the address set forth in the Schedules, unless such address is superseded by a proofs of claim or transfer of claims filed pursuant to Bankruptcy Rule 3001, or at the last known address of such Holders if the Distribution Agent has been notified in writing of a change of address, a notice, identifying the distributions that were unclaimed or returned (the "Unclaimed Property Notice") and providing such Holders with a reasonable opportunity to object or respond to the release of the Unclaimed Property from the Unclaimed Property Reserve.  Once the distribution to Holders of Allowed Claims becomes Unclaimed Property, the Distribution Agent shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property

23

Reserve solely for the benefit of such Holder or Holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the Holder entitled thereto upon presentation of proper proof by such Holder of its entitlement thereto. After the expiration of ~~sixty (60) days~~the objection deadline set forth in the applicable Unclaimed Property Notice, with no response, the Holders of Allowed Claims entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Assets of the Reorganized Debtor and returned to the Reorganized Debtor. Such funds shall not be subject to the escheat laws of any state.

Nothing contained in the Plan or the Confirmation Order shall require the Debtor, the Reorganized Debtor or the Distribution Agent to attempt to locate any Holder of an Allowed Claim.

J.    *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no Holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged; provided, however, that nothing in the Plan, the Disclosure Statement (or any Order approving the same), or the Confirmation Order shall in any way impair, modify, change, alter or otherwise impact any and all obligations under Unexpired Leases, including the obligation to pay late fees, if any.

K.    *Setoffs and Recoupment.*

The Reorganized Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claim it may have against the Holder of such Claim.

L.    *Claims Paid or Payable by Third Parties.*

1.    <u>Claims Paid by Third Parties</u>.  The Reorganized Debtor shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further ~~notice to or~~action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor; *provided, however*, the Debtor shall provide notice to such Holder of such Claim at the address or email address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such Holders if the Distribution Agent has been notified in writing of a change of address, informing such Holder that its Claim is being reduced and/or disallowed as a result of the payment made by a third party..  To the extent a Holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or the Reorganized Debtor on account of such Claim, such Holder shall repay, return, or

24

deliver the portion of any distribution to the Reorganized Debtor that causes such Holder's total recovery on account of such Claim from the third party and under the Plan to exceed the amount of such Claim as of the date of any such distribution under the Plan. The Reorganized Debtor and the Debtor's Estate reserve all of their rights, remedies, claims, and actions against any such Holders who fail to repay or return the excess portion of any such distribution.

2.      <u>Claims Payable by Third Parties</u>.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement <u>and notice to the Holder of such Allowed Claim</u>, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further ~~notice to or~~ action, order, or approval of the Bankruptcy Court.

3.      <u>Applicability of Insurance Policies</u>.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.

### ARTICLE VI
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases.*

Upon entry of the Confirmation Order, all Executory Contracts and Unexpired Leases shall be deemed assumed contingent on ~~,~~ and ~~as of~~ <u>effective upon,</u> the occurrence of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtor; (ii) previously expired or terminated pursuant to its own terms; (iii) has been assumed and assigned to a purchaser of the Debtor's assets; or (iv) was rejected pursuant to the Plan Supplement.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumption of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

~~Upon~~ <u>Notwithstanding anything to the contrary in this Plan, the Disclosure Statement (or any Order approving the same), or the Confirmation Order, including the releases, injunctions, and exculpation provisions under Article VII of the Plan, upon</u> assumption of an Unexpired Lease, the Debtor or Reorganized Debtor shall satisfy any accrued but unbilled amounts under such Unexpired Lease (if applicable) including, but not limited to, common area maintenance charges, taxes, and year-end adjustments, and shall remain liable for all obligations arising under an assumed Unexpired Lease including:  (a) for amounts owed or accruing under such Unexpired Lease that are unbilled or not yet due regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, utilities, and similar charges; (b) any regular or periodic adjustment or reconciliation of charges under such Unexpired Lease that are not due or have not been determined; (c) any percentage rent that comes due under such Unexpired Lease; (d) post-assumption obligations under such Unexpired Lease; and (e) any obligations to

25

indemnify the non-Debtor counterparty under such Unexpired Lease pursuant to the terms of the lease.

Notwithstanding anything to the contrary in this Plan, the Disclosure Statement (or any Order approving the same), or the Confirmation Order, including the releases, injunctions, and exculpation provisions under Article VII of the Plan, nothing shall modify the rights, if any, of any Holder of a Claim or any current or former party to an executory contract or lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or nonbankruptcy law, including, but not limited to, (a) the ability, if any, of such parties to set off or recoup a security deposit held pursuant to the terms of their lease(s) with the Debtor or the Reorganized Debtor (or any successors thereto); (b) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (c) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtor or Reorganized Debtor (or any successors thereto).

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court or the Notice, Claims and Balloting Agent by the Rejection Claim Bar Date. Notwithstanding any order, Bankruptcy Rule, or provision of the Plan or Bankruptcy Code to the contrary, to the extent that any counterparty to an Executory Contract or Unexpired Lease may be subject to a Rejection Claim Bar Date that is later than the General Bar Date, such counterparty may include Claims that arose prior to the Petition Date in any Proof of Claim filed by the Rejection Claim Bar Date, such that the counterparty shall not be required to file a Proof of Claim for such prepetition Claims by the General Bar Date. The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the five clauses set forth in Article VI.A hereof are deemed assumed as of the Effective Date. Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 4 of the Plan, which information shall be included in the Notice of the Effective Date.

C.    *Claims Based on Assumption of Executory Contracts and Unexpired Leases.*

To the extent that prior to Confirmation the Debtor has not Filed a Notice of Assumption or Notice of Rejection for all or some of its executory contracts and unexpired leases, it shall, at least twenty-one (21) days prior to the Confirmation Hearing, file a list of the Executory Contracts and Unexpired Leases it intends to assume and the associated Cure Amounts, if any, as part of its Plan Supplement and a list of the Executory Contracts and Unexpired Leases it intends to Reject as part of the Plan Supplement. The Plan Supplement (and any further supplements or amendments thereto) shall be served upon the counterparties to the Executory Contracts and Unexpired Leases (and their counsel if having appeared in the case), all creditors and parties-in-interest. To the extent that the counterparty to the Executory Contract or Unexpired Lease disagrees with the Cure Amounts listed in the Plan Supplement, the counterparty must file an objection within twenty-one

(21) days after filing of the Plan Supplement. If a counterparty to an Executory Contract or Unexpired Lease files an objection to a Cure Amount listed in the Plan Supplement, thereby commencing a Cure Dispute, the Debtor shall pay to such counterparty the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Effective Date, with the disputed portion to be subject to the Cure Dispute Guaranty pending resolution of the Cure Dispute. Once the parties resolve the disputed portion of a Cure Amount, the Debtor shall pay the agreed amount to the applicable counterparty within fourteen (14) days of such resolution.

Post Confirmation, the Debtor or Reorganized Debtor, as applicable, and each counterparty to an Executory Contract and Unexpired Lease subject to a Cure Dispute shall attempt to resolve any such disputes. In the event that a Cure Dispute cannot be amicably resolved between the parties, either party may file an application with the Bankruptcy Court, on twenty-one days' notice to the other party, requesting a hearing by the Bankruptcy Court to ~~resolve the Cure Dispute. If there is a Cure Dispute, the Debtor or the Reorganized Debtor, as applicable, reserves the right to reject or nullify the assumption of the applicable Executory Contract or Unexpired Lease no later than thirty (30) days after an order of the Bankruptcy Court resolving such Cure Dispute becomes a Final Order~~ determine the Cure Dispute.

D.  *Guaranty for Cure Disputes.*

To the extent that any Cure Dispute is resolved in favor of the counterparty to the Executory Contract or Unexpired Lease, the amount of the Cure Dispute shall be paid to the counterparty by the Debtor or Reorganized Debtor, as applicable, and L'Occitane International shall guarantee to the Debtor the full amount of such Cure Dispute.

E.  *Modifications, Amendments, Supplements, Restatements or Other Agreements.*

Unless otherwise specified, each Executory Contract and Unexpired Lease assumed, assumed and assigned or rejected by the Debtor shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, including changes made during the Chapter 11 Case.

F.  *Payments Related to Assumption of Contracts and Leases.*

Any Cure Amount shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the Cure Amount in Cash, on the Effective Date, subject to the limitations in Section VI.D. or on such other terms as the parties to such executory contracts and unexpired leases and the Debtor may otherwise agree.

**ARTICLE VII**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.  *Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or

27

document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests against and in the Debtor.

      B.    *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

      C.    *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

      D.    *Release*

      1.    **Releases by the Debtor**

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, , for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally, and individually and collectively released, acquitted, and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any Released Party, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.  In addition to the foregoing, upon the Effective Date, the Debtor shall waive, relinquish, and release all Avoidance Actions.

2.    **Third-Party Releases**

For good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim or Interest shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, whether direct or derivative, known, or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any

29

Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

E.    *Injunction.*

Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor or against any Released Party that have been released and/or exculpated under the this Plan (the "<u>Released Claims and Interests</u>") are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Reorganized Debtor, the Distribution Agent, the Reorganized Debtor Assets, or the Released Parties or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective Date) directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; *provided, however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

F.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO**
**CONSUMMATION OF THE PLAN**

A.    *Conditions Precedent to the Effective Date.*

30

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1.      the Bankruptcy Court shall have entered the Confirmation Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.      all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.      the Exit Loan Facility shall have been effectuated and shall have been funded with the Distribution Agent;

4.      the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

5.      all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B.      *Waiver of Conditions.*

The conditions to Consummation set forth in this Article VIII of the Plan may be waived only by prior written consent of the Debtor (in consultation with the Creditors' Committee), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. Notwithstanding anything to the contrary herein, the conditions precedent set forth in Article VIII(A)(1), (3), and (4) hereof shall not be waived.  Upon the waiver or occurrence of all the conditions to Confirmation and Consummation set forth in this Article VIII of the Plan, the Debtor shall immediately declare the Effective Date and file the Notice of Effective Date.

C.      *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty (180) days following the Confirmation Date, unless such time shall have been extended by order of the Bankruptcy Court on request by the Debtor, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any Holders or any other Entity; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holder of any Claim or any other Entity in any respect.

31

**ARTICLE IX**
**MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN**

A.     *Modification, Amendments or Revocation.*

Except as otherwise specifically provided in the Plan, the Plan Proponents reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Plan Proponents expressly reserve their rights, to revoke or withdraw, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. If the Plan Proponents revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtor, any Holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, any Holder or any other Entity

B.     *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**ARTICLE X**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case pursuant to sections 105(a) and 1142 of the Bankruptcy Code; *provided, however*, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

A.     *Immediate Binding Effect.*

32

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all present and former Holders of Claims or Interests, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor each of respective successors and assigns of the foregoing persons and Entities.

B.      *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all Holders receiving distributions pursuant to the Plan and all other parties-in-interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor, with respect to the Plan, the Disclosure Statement, or Plan Supplement, if any, shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the Holders of Claims and Interests or each other before the Effective Date.

D.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

E.      *Notices.*

To be effective, all notices, requests, and demands to or upon the Debtor shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

> The Debtor:
>
> L'Occitane, Inc.
> Attn: Yann Tanini and Ross Novak
> 111 West 33rd Street, 20th floor,
> New York, NY 10120

33

with a mandated copy (which shall not constitute notice) to:

<u>Counsel to Debtor and Debtor in Possession</u>

Mark E. Hall, Esq. (mhall@foxrothschild.com)
Martha B. Chovanes, Esq. (mchovanes@foxrothschild.com)
Michael R. Herz, Esq. (mherz@foxrothschild.com)
FOX ROTHSCHILD LLP
49 Market Street
Morristown, New Jersey 07960
Telephone:  (973) 992-4800
Facsimile:  (973) 992-9125

<u>Counsel to the Creditors' Committee</u>

Warren A. Usatine, Esq. (wusatine@coleschotz.com)
Justin Alberto, Esq. (jalberto@coleschotz.com)
Seth Van Aalten, Esq. (svanaalten@coleschotz.com)
COLE SCHOTZ, P.C.
25 Main Street
Hackensack, NJ | 07601
Telephone: (201) 489-3000
Facsimile (201) 678-6233

F.    *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.    *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://cases.stretto.com/LOccitane or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.njb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H.    *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable,

consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

I.  *Exemptions from Certain Transfer Taxes.*

To the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) all sale transaction consummated by the Debtor and approved by the Bankruptcy Court on and after Confirmation through and including the Effective Date, including any transfers effectuated under the Plan, (d) any assumption, assignment or sale by Debtor of their interest in unexpired leases of nonresidential real property or executory contracts pursuant to 365(a) of the Bankruptcy Code, and (e) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

J.  *Closing of Chapter 11 Case.*

The Reorganized Debtor shall promptly, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Case.

K.  *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtor.

L.  *No Waiver.*

35

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtor.

M.    *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any matter affects the terms, provisions or interpretation of the Plan.

N.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

36

Dated:  ~~July 15~~August 20, 2021

Respectfully Submitted,

L'OCCITANE, INC.                                        COLE SCHOTZ, P.C.


/s/ Yann Tanini                                        /s/ Warren A. Usatine
By: Yann Tanini                                        By: Warren A. Usatine
Regional Managing Director                             Counsel to the Committee

---

~~124472910.2~~

| Summary Report | |
|---|---|
| Title | **compareDocs Comparison Results** |
| Date & Time | 8/20/2021 11:01:02 AM |
| Comparison Time | 1.39 seconds |
| compareDocs version | v5.0.100.42 |

| Sources | |
|---|---|
| Original Document | [#124472910] [v2] L'Occitane - Amended Plan (clean).docx |
| Modified Document | [#125504131] [v1] L_Occitane - Second Amended Plan.docx |

| Comparison Statistics | |
|---|---|
| Insertions | 71 |
| Deletions | 61 |
| Changes | 11 |
| Moves | 0 |
| Font Changes | 0 |
| Paragraph Style Changes | 0 |
| Character Style Changes | 0 |
| TOTAL CHANGES | 143 |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Standard |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Font Changes | |
| Paragraph Style Changes | |
| Character Style Changes | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Changed lines | Mark left border. |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after saving | General | Always |
| Report Type | Word | Redline |
| Character Level | Word | False |
| Include Comments | Word | False |
| Include Field Codes | Word | True |
| Flatten Field Codes | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include Headers / Footers | Word | True |
| Image compare mode | Word | Insert/Delete |
| Include List Numbers | Word | True |
| Include Quotation Marks | Word | False |
| Show Moves | Word | False |
| Include Tables | Word | True |
| Include Text Boxes | Word | True |
| Show Reviewing Pane | Word | True |
| Summary Report | Word | End |
| Detail Report | Word | Separate (View Only) |
| Document View | Word | Print |