| |
|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) <br><br> **FOX ROTHSCHILD LLP** <br> 49 Market St. <br> Morristown, NJ 07960 <br> Mark E. Hall, Esq. <br> Martha B. Chovanes, Esq. <br> Michael R. Herz, Esq. <br> mhall@foxrothschild.com <br> mchovanes@foxrothschild.com <br> mherz@foxrothschild.com <br> Telephone:  (973) 992-4800 <br> Facsimile:   (973) 992-9125 <br> *Counsel for L'Occitane, Inc.* <br><br> **COLE SCHOTZ P.C.** <br> Court Plaza North <br> 25 Main Street <br> Hackensack, New Jersey 07601 <br> Warren A. Usatine, Esq. <br> Seth Van Aalten, Esq. (admitted pro hac vice) <br> Justin R. Alberto, Esq. (admitted pro hac vice) <br> wusatine@coleschotz.com <br> svanaalten@coleschotz.com <br> jalberto@coleschotz.com <br> Telephone: (201) 489-3000 <br> Facsimile: (201) 489-1536 <br> *Counsel for the Official Committee of Unsecured Creditors* |

| In Re: <br><br> L'OCCITANE, INC., <br><br>                          Debtor. | Chapter 11 <br><br> Case No. 21-10632-MBK <br><br> Judge:  Michael B. Kaplan |
|---|---|

**CERTIFICATION OF YANN TANINI IN SUPPORT OF FINAL APPROVAL OF FIRST AMENDED DISCLOSURE STATEMENT AND CONFIRMATION OF SECOND AMENDED JOINT PLAN OF REORGANIZATION OF L'OCCITANE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS <u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

125440262.3

I, YANN TANINI, being of full age, hereby declare pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am the Regional Managing Director of L'Occitane, Inc. ("the "**Debtor**"), the debtor-in-possession in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), and in that capacity, I am fully familiar with the Debtor's daily operations and books and records.

2. I submit this certification (the "**Certification**") in support of final approval of the *First Amended Disclosure Statement in Support of the First Amended Joint Plan of Reorganization of L'Occitane, Inc. and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the Bankruptcy Code* ([Docket No. 411] and confirmation of the *Second Amended Joint Plan of Reorganization of L'Occitane, Inc. and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the Bankruptcy Code* (together with all exhibits and as amended, modified and supplemented, the "**Plan**").[1] [Docket No. 501].

3. Unless otherwise stated, in making this Certification, I have relied upon and/or considered, among other things, the following: (a) my knowledge of the Debtor's business, operations, assets, and liabilities; (b) my review of relevant documentation of the Debtor; (c) the Plan; (d) the Disclosure Statement; (e) my discussions with and information provided by the various other officers and directors of the Debtor, key employees of the Debtor, counsel and professionals; and (f) other parties in interest in the Chapter 11 Case. If I were called upon to testify, I would testify competently to the facts set forth in this Certification. I am authorized to submit this Certification on behalf of the Debtor.

4. I have served as the Regional Managing Director of the Debtor since March 2019. As Regional Managing Director of the Debtor, I oversee the day-to-day operations of the Debtor.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Amended Disclosure Statement, as applicable.

125440262.3

5. The Debtor is a leading retailer in the United States of beauty and well-being products rich in natural and organic ingredients that preserves and celebrates the traditions of Provence. The L'OCCITANE en Provence brand has gained iconic status globally for its premium body and bath, hand, hair, and fragrance products as it captures the true art de vivre of Provence, offering a sensorial immersion in the natural beauty and lifestyle of the South of France.

6. The Debtor was formed on July 10, 1995 as a means to expand the L'Occitane brand in the United States. The Debtor is incorporated in the state of New York, and maintains its headquarters at 111 West 33rd Street, 20th FL, New York, New York 10120.

7. Like most retailers in the United States, the Debtor was impacted by the COVID-19 pandemic, which significantly limited retail operations throughout the country and suppressed consumer willingness to shop in person. Even prior to the pandemic, the Debtor was experiencing a decline in sales revenue from its brick-and-mortar boutiques, while its e-commerce revenue had dramatically increased. Consequently, the Debtor's lease obligations became increasingly untenable and prompted the Debtor to assess and gradually reduce its lease portfolio prepetition and ultimately to file chapter 11 to allow it to reject certain leases and resize its retail footprint.

8. On the Petition Date, the Debtor operated 166 boutiques and now, post Confirmation, will be emerging stronger with 133 boutiques and a reworking of the majority of its leases. The Debtor has successfully achieved its goals for which it filed for chapter 11 relief, including right-sizing its footprint and preserving the substantial majority of its workforce, and is excited to submit a Plan that provides for payment, in full, of all Allowed Claims. The Plan is to be funded by the Debtor's available Cash on hand and an unsecured Exit Loan Facility provided by the Debtor's parent, L'Occitane International, S.A. ("**International**") in an amount sufficient to pay all Allowed Claims under the Plan (with the exception of Professional Fee Claims, which

will be funded by a Professional Fee Claim Reserve).  To ensure the Debtor's obligations under the Plan, International will provide guarantees to the Debtor to (i) pay any Disputed Claims in the event such Disputed Claim is determined in favor of the Holder of the Disputed Claim, and (ii) pay any Cure Amount subject to a Cure Dispute in the event that such Cure Dispute is determined in favor of the counterparty to an Executory Contract or Unexpired Lease.  The funding and guarantees from International will enable the Debtor to make a 100% distribution to Allowed Claims without having to leverage its assets.

9.  Based on the foregoing, I believe that the Plan satisfies all conditions to confirmation set forth in the Bankruptcy Code and should be confirmed.

## THE PLAN SATISFIES THE PLAN CONFIRMATION REQUIREMENTS OF 1129(A) OF THE BANKRUPTCY CODE

10.  I understand that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of [the Bankruptcy Code]."  I further understand that the primary focus of this requirement is to ensure that a plan complies with sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of a plan, respectively.

11.  I understand that, under section 1122 of the Bankruptcy Code, a plan may classify various claims and interests into different classes, so long as all the claims and interests in a particular class are substantially similar.  It is my understanding that valid business, factual, and legal reasons exist for classifying the Claims and Interests into separate Classes under the Plan, and the Claims or Interests in each particular Class are substantially similar.  Similar Claims and Interests have not been placed into different Classes.  In particular, the Plan designates distinct classes for each of:  Secured Tax Claims (Class 1); Other Secured Claims (Class 2); Other Priority Claims (Class 3); General Unsecured Creditors (Class 4); Intercompany Claims (Class 5); and

4

125440262.3

Interests (Class 6). Accordingly, I believe that the Plan satisfies section 1122 of the Bankruptcy Code.

12. Furthermore, I understand that section 1123(a) of the Bankruptcy Code requires that a chapter 11 plan must: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide for equality of treatment within each class; (e) provide adequate means for the plan's implementation; (f) not provide for nonvoting equity securities, but must provide an appropriate distribution of voting power among the classes of securities; and (g) contain only provisions that are consistent with the interests of the creditors, equity security holders, and public policy with respect to the manner of selection of the reorganized company's officers and directors. I understand that the Plan satisfies each of these requirements, to the extent applicable, as follows:

(i) As noted above, Article III.B of the Plan designates six (6) separate Classes of Claims and Interests, as required by section 1123(a)(1) of the Bankruptcy Code.

(ii) Article III.C of the Plan also specifies that the Claims in each of the Classes are Unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code.

(iii) Article III.C of the Plan further specifies that there are no Impaired Classes of Claims in accordance with section 1123(a)(3) of the Bankruptcy Code.

(iv) As required by section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim or Interest within a Class either is (1) the same as the treatment of each other Claim or Interest in such Class or (2) otherwise consistent with the legal rights of such claimant.

(v) In accordance with the requirements of section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation through Article IV and various other provisions. Specifically, the Plan provides for, among other things: (1) the payment in full of all Allowed Claims; (2) Funding of the Plan through the Debtor's Cash on Hand and an Exit Loan Facility provided by International; (3) the reorganization of the Debtor and the continued existence of the Debtor; and (4) the exemption from certain transfer taxes.

125440262.3

  (vi) Finally, the Plan complies with section 1123(a)(7) of the Bankruptcy Code in that it leaves in place on the Effective Date the officers and directors who were in place on the Petition Date. This appointment is consistent with the interests of creditors and public policy, as the Debtor is reorganizing.

13. I also believe that the discretionary contents of the Plan are appropriate under section 1123(b) of the Bankruptcy Code. For instance, the Plan provides for the assumption of all executory contracts and unexpired leases to which the Debtor is a party and that have not previously been or currently are in the process of being rejected. *See* Art. VI.A. I understand that the Plan includes other provisions designed to ensure its implementation that are consistent with the Bankruptcy Code, including the exculpation and injunction provisions of Article VII.C and VII.E, respectively; retention of causes of action as provided in Article VI.E.; and retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date as set forth in Article X. I understand that each of these provisions is appropriate under applicable law, including sections 1123(b)(2), (3), and (6) of the Bankruptcy Code and Bankruptcy Rule 9019.

14. **The Plan Complies with 1129(a)(2) of the Bankruptcy Code.** I believe that the Debtor has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as modified by the Bankruptcy Court's *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [Docket No. 461] (the "**Interim Approval and Scheduling Order**") governing notice, disclosure and scheduling in connection with the Plan and the Disclosure Statement. The affidavits of service filed reflecting compliance with the notice and solicitation requirements of the Interim Approval and Scheduling Order show that the Debtor has complied with such disclosure and

125440262.3

noticing requirements, and caused to be mailed the Notice Package and Confirmation Hearing Notice in accordance with the Interim Approval and Scheduling Order.  Accordingly, to the best of my knowledge, the Debtor has complied with all applicable disclosure and noticing requirements set forth in the Bankruptcy Code and the Bankruptcy Rules, as modified by the Interim Approval and Scheduling Order.

15. **The Plan is Proposed in Good Faith Pursuant to Section 1129(a)(3) of the Bankruptcy Code.**  I understand that, under section 1129(a)(3) of the Bankruptcy Code, a plan must be "proposed in good faith and not by any means forbidden by law."  The Debtor structured and proposed the Plan in a manner that effectuates the objectives and purposes of the Bankruptcy Code.  I believe that the Plan contains no provisions that are contrary to state or other laws, and am unaware of any indication the Debtor lacks the ability to consummate the Plan.  Moreover, the terms of the Plan itself and the treatment of Creditors thereunder, and the process leading to the Plan's formulation which is part of the record in the Chapter 11 Case, provide independent evidence of the good faith of the Debtor, the Committee, International, the officers, directors and employees of the Debtor and International, and the various other parties-in-interest that were involved in the negotiation of the Plan.  Finally, I believe that the fact that the Committee is a Plan Proponent, and that the Debtor's Creditors are receiving 100% of their Allowed Claims reflect the overall fairness of the Plan.  For these reasons, I believe the Plan was filed in good faith to further the purposes of the Bankruptcy Code, and I therefore believe that it satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  This belief is further bolstered by the fact that other than an objection filed by the United States Trustee related to releases, no substantive objections to the Disclosure Statement or Plan have been filed by creditors or any other party.

7

125440262.3

16. **The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code**. I understand that section 1129(a)(4) of the Bankruptcy Code requires: "Any payment made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case . . . has been approved by, or is subject to the approval of, the court as reasonable." Pursuant to the Plan and other orders of the Bankruptcy Court, all Professional Fee Claims are subject to Bankruptcy Court approval. Accordingly, I believe that the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

17. **The Debtor has Disclosed All Necessary Information Regarding Directors, Officers and Insiders.** I understand that section 1129(a)(5) of the Bankruptcy Code requires that (a) the proponent of a chapter 11 plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (b) the appointment of such individual complies with the interests of creditors and shareholders, and with public policy; and (c) the proponent discloses the identity of any insider, as defined under section 101(31)(B) of the Bankruptcy Code, that the reorganized debtor will employ and the nature of the compensation provided to that insider. As provided in Article IV.G of the Plan, from and after the Effective Date, the same officers and directors who served the Debtor prepetition and through the negotiation of the Plan shall continue to serve the Reorganized Debtor post-Confirmation pursuant to the same legal organizational documents that were in effect prior to the Petition Date. Accordingly, I believe that the Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.

18. **Section 1129(a)(6) is Inapplicable.** The Debtor has no rates that are subject to approval of any governmental regulatory commission. Accordingly, this provision of the Bankruptcy Code is not applicable to the Debtor.

19.     **The Plan is in the Best Interests of Creditors and Interest Holders Under Section 1129(a)(7) of the Bankruptcy Code.**     I understand that, to satisfy section 1129(a)(7) of the Bankruptcy Code, the Debtor must demonstrate that with respect to each impaired class of claims or interests, each individual holder of a claim or interest either has accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.

20.     I also understand that the "best interests" test applies to individual dissenting creditors or interest holders, rather than classes of claims and interests, and generally is satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical liquidation of that debtor's estate under chapter 7 of the Bankruptcy Code against the estimated recoveries under that debtor's chapter 11 plan.

21.     First, none of the Classes of Claims is Impaired and therefore, all of the Classes were deemed to accept the Plan and were not entitled to vote.  Further, to satisfy the best interests test, the Debtor's Financial Advisors, RK Consultants, prepared a hypothetical liquidation analysis (the "**Liquidation Analysis**") of the Debtor to determine the recovery by creditors in the event that the case converted to one under chapter 7 of the Bankruptcy Code.  A copy of the Liquidation Analysis was attached as Exhibit C to the Disclosure Statement.  The Liquidation Analysis reflects that a liquidation under chapter 7 of the Bankruptcy Code would result in significantly smaller distributions to holders of Claims and Interests than those provided for in the Plan because: (a) International would not provide funding or the guarantees to the Debtor for a plan that pays creditors 100% of their Allowed Claims; (b) conversion to cases under Chapter 7 of the Bankruptcy Code would impose additional administrative expenses (including, without limitation, the fees and

expenses of a chapter 7 trustee and his or her professionals) that would be required to be paid prior to the payment of any chapter 11 administrative expenses or claims; and (c) there would be no incremental value realized by the Estate or made available to creditors under a chapter 7 case. Further, given that the Debtor does not own any real estate or other property of note,[2] the value to the creditors if the Debtor is liquidated is very small – only 16% recovery according to the Liquidation Analysis. Last, the reorganization provides value to the Debtor as it will continue to operate and employ its substantial workforce.

22. I am familiar with the Liquidation Analysis and the underlying financial data and assumptions upon which the Liquidation Analysis is based, which are accurately described in the Liquidation Analysis and notes thereto. I believe that the estimated liquidation values set forth in the Liquidation Analysis are fair and reasonable estimates of the value of the Debtor's assets based on the assumptions set forth therein. I believe that the estimates as to the ultimate amount of allowed claims against, and expenses of, the hypothetical chapter 7 estates are fair and reasonable and, based on those estimates, combined with the estimated liquidation values of assets, that each Class of Claims under the Plan will receive at least as much as that Class would receive in a hypothetical chapter 7 liquidation. In fact, they will receive significantly more – 100% instead of 16%.

23. **The Plan Complies with Sections 1129(a)(8) and 1129(b) of the Bankruptcy Code.** I understand that section 1129(a)(8) of the Bankruptcy Code requires that "with respect to each class of claims or interests — (A) such class has accepted the plan or (B) such class is not impaired under the Plan." Holders of Claims in Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims), Class 3 (Other Priority Claims), Class 4 (General Unsecured Claims), Class 5

---

[2] For instance, the intellectual property utilized by the Debtor is owned by International.

10

125440262.3

(Intercompany Claims), and Class 6 (Interests) are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have voted to accept the Plan. Thus, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied as to each of the Classes.

24. My counsel has also explained to me that if certain classes of claims are impaired and vote to reject a plan, it can still be confirmed over such class's rejection, called a "cramdown" pursuant to the provisions of section 1129(b) of the Bankruptcy Code so long as it does not discriminate unfairly against, and is fair and equitable to, the holders of claims and interests in those classes. Because Debtor's Plan meets all of the requirements of 1129(a), it is my understanding that the Plan does not need to meet the requirement of a "cramdown."

25. Nonetheless, it is my further understanding that (a) a plan is "fair and equitable" to rejecting classes if the holders of claims and equity interests in classes junior to the rejecting classes are not receiving any property under the plan, and (b) a plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are substantiallysimilar to those of that class. For the reasons discussed above, I believe that the Plan satisfies these requirements.

26. **The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code**. I understand that all administrative and priority claims against the Debtor will be satisfied in the manner required by section 1129(a)(9) of the Bankruptcy Code, unless such holder of a particular claim has agreed to different treatment of such claim.

27. **The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code.** As noted above, none of the Classes of Claims or Interests in the Plan are Impaired and accordingly, are conclusively presumed to have voted to accept the Plan.

125440262.3

28.    **The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code.**  Based on my knowledge of the Debtor and the terms of the Plan, I believe that the Plan is feasible.  I understand that section 1129(a)(11) of the Bankruptcy Code provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

29.    The Debtor's Chief Financial Officer prepared three (3) year financial projections (the "**Projections**").    The Projections are outlined in the Disclosure Statement and are discussed in detail therein.  *See* Article IV., ¶ 4.1.5.  Based upon the information contained in the Plan, the Disclosure Statement and the Projections, I believe that the Debtor's Cash on hand upon emergence and the unsecured Exit Loan Facility provided by International will provide sufficient liquidity to make all required payments under the Plan, and to satisfy all ongoing working capital requirements.  Further, the 2021 Year-End Report of International annexed as Exhibit B to the Disclosure Statement demonstrates that International has the financial wherewithal to provide sufficient funding through the Exit Loan Facility to ensure that the Debtor fulfills its obligations under the Plan, as well as to fund the Disputed Claim Guaranty and the Cure Dispute Guaranty as needed.  Based upon the foregoing, the Plan is feasible because there is a reasonable likelihood that the Reorganized Debtor will meet its financial obligations under the Plan in the ordinary course of business and because confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtor.

30.    **The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code**.  The Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on or prior to the Effective

12

Date.  Based on my review of the Debtor's books and records, the Debtor has adequate means to make such payments, and therefore the Plan satisfies section 1129(a)(12) ofthe Bankruptcy Code.

31.    **Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) are Inapplicable**.  The Debtor does not provide retiree benefits, is not subject to any judicial or administrative order or statute requiring the Debtor to pay a domestic support obligation, is not an individual debtor, or a nonprofit corporation or trust.  Accordingly, these provisions of the Bankruptcy Code are not applicable to the Debtor.

32.    **The Plan Complies with Section 1129(c) of the Bankruptcy Code**.  The Plan is the only plan that has been proposed, and thus I believe that the requirement of section 1129(c) of the Bankruptcy Code has been met.

33.    **The Plan Complies with Section 1129(d) of the Bankruptcy Code**.  The Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of requirements of section 5 of the Securities Act of 1933, and I am not aware of any filing by anygovernmental agency asserting such avoidance.  Thus, I believe that the requirements of section1129(d) of the Bankruptcy Code have been met.

125440262.3

## OTHER PLAN PROVISIONS ARE NECESSARY AND APPROPRIATE

34. **The Plan's Releases and Exculpation Provisions Should Be Approved**. Article VIII.D.1 of the Plan provides for releases by the Debtor of the Released Parties (the "**Debtor Releases**") and Article VIII.D.2 of the Plan provides for releases by each Holder of a Claim or Interest of certain non-Debtor third parties (the "**Third-Party Releases**," and together with the Debtor Releases, the "**Releases**"). The Plan also includes in a customary exculpation and limitation of liability provision (the "**Exculpation Provision**") in Article VIII.C, and a customary injunction provision (the "**Injunction Provision**") in Article VIII.E.

35. I believe that the Debtor Releases are appropriately tailored under the facts and circumstances of this Chapter 11 Case and are supported by ample consideration and that approval of the Debtor Releases represents the sound and valid exercise of the Debtor's business judgment and is permissible under section 1123(b)(6) of the Bankruptcy Code and applicable law. As an initial matter, the Released Parties made important contributions in this Chapter 11 Case, including (i) providing the Debtor with inventory post-petition valued at approximately $19 million that would otherwise have been an administrative claim but instead is being treated as an unsecured loan pursuant to the Bankruptcy Plan Funding Agreement; (ii) providing funding for the 100% Plan; and (ii) negotiating and formulating the Plan and otherwise navigating the Debtor toward a successful exit from chapter.

36. Moreover, the Releases are an integral and necessary part of the Plan and, among other things, reflect compromises made and agreed to by the Debtor's equity holders. These compromises included forgoing payments due and owing for inventory and loans as well as funding for the Plan, which allow for greater distributions to the Debtor's other creditors and prevent the incurrence by the Estate of any additional costs that may be incurred in administering

125440262.3

such Claims. In fact, International, Debtor's parent company, conditioned its Exit Loan Financing, as well as the Disputed Claim Guaranty and the Cure Dispute Guaranty, on obtaining a release from the Debtor and the Holders of Claims.

37. Additionally, the Committee helped in negotiation and formulation of the Plan, as a co-proponent of the Plan, and the directors and officers of the Debtor and International as well as certain key employees of the Debtor were instrumental in bringing this excellent result for creditors to fruition. Furthermore, I do not have any reason to believe that the Debtor is releasing any valuable claims. Notably, the claims subject to the Debtor Releases specifically exclude claims based on or arising out of gross negligence, fraud, or willful misconduct.

38. Finally, the Debtor's board of directors, including the independent director, and management reviewed, considered, and approved the Debtor Releases in the sound exercise of their business judgment.

39. The Third-Party Releases also are fair and reasonable, for the same reasons noted in the support for the Debtor Releases. The Released Parties made important contributions to the Plan process and the Third-Party Releases were a necessary and integral part of the Plan. The Holders of Allowed Claims and Interests will be paid in full and therefore requiring a release from them is fair and reasonable. Further, the Debtor has agreed to waive all of its Avoidance Actions against creditors. Accordingly, I believe the Third-Party Releases should be approved.

40. The failure to implement the release, exculpation, and injunction provisions in the Plan would result in International withdrawing its Exit Loan Financing as well as the Disputed Claim Guaranty and the Cure Dispute Guaranty and would seriously impair the Debtor's ability to confirm and consummate the Plan and would possibly lead to the conversion of the Debtor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

125440262.3

41. I believe that the proposed Exculpation Provision is appropriate based on the limitation of liability provided in section 1125(e) of the Bankruptcy Code. The Exculpation Provision expressly and narrowly applies to the Exculpated Parties and only relates to Exculpated Claims in connection with the Chapter 11 Case. Accordingly, I believe that the Exculpation Provision should be approved as appropriate under section 1125(e) of the Bankruptcy Code.

42. Further, the proposed Injunction Provision is appropriate in this Chapter 11 Case in order to protect the Released Parties and Exculpated Parties from any potential litigation from prepetition creditors after the Effective Date.

I certify that the foregoing statements made by me are true and I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: August 20, 2021

                                                              */s/ Yann Tanini*
                                                               Yann Tanini